LOLLEY, J.
11 Defendant, PHC-Minden, L.P. d/b/a Minden Medical Center, appeals a judgment of the 26th Judicial District Court, Parish of Webster, State of Louisiana, granting class certification in favor of Prentiss Baker, Sheryl Wiginton, and Ju-dyette Allen. For the reasons that follow, we reverse the trial court’s judgment and decertify the class.
Facts
Prentiss Baker,[1] Sheryl Wiginton, and Judyette Allen (hereinafter referred to as “plaintiffs”) filed this class action on July 13, 2011, alleging improper and illegal billing practices by Minden Medical Center (hereinafter referred to as “MMC” or “the hospital”). In summary, plaintiffs alleged that MMC had a policy in effect since at least 2000 for billing insured patients involved in motor vehicle accidents where a third party is liable for the crash. This policy was implemented across-the-board, regardless of the health insurance issuer involved. With the policy, it was alleged that MMC ignored the Health Care Consumer Billing and Disclosure Protection Act and member provider agreements, and instead, did the following:
1. Upon admission or soon thereafter, MMC collected information from the patient about the offending driver’s liability insurance and the patient’s own car insurance;
2. If the patient did not know the information upon admission, MMC sent a form letter to the patient requesting that the patient get the liability insurance information and contact MMC to get that information;
3. Once the liability insurance information was obtained or the patient’s attorney is known, MMC would send a lien ^pursuant to La. R.S. 9:4752 to the liability insurer and. the patient’s attorney seeking to collect from the patient’s damage settlement the full and undiscounted rate.
4. If the time delays were such that MMC was close to running out of time to file with the patient’s health insurance, MMC would only then file a claim with the health insurance company, but not before it first asserted its lien on the patient’s settlement through the liability insurance company and the patient’s attorney.
Even if MMC filed a claim with and received payment through the health insurance company, MMC still attempted to collect the full rate from the patient’s settlement though the patient’s attorney and the liability insurer using medical liens filed pursuant to La. R.S. 9:4752. The *923 plaintiffs allege that hundreds of other patients have been subjected to this policy, which they argue violates the Health Care Consumer Billing and Disclosure Protection Act, set forth in La. R.S. 22:1871 et seq.
The facts particular to each named plaintiff are as follows.

Prentiss Baker

On January 31, 2007, Baker was involved in a motor vehicle accident in Min-den, Louisiana, resulting in serious injuries requiring medical attention. After being treated for his injuries, Baker incurred medical expenses in the amount of $1,394.56. Although not specifically mentioned in the pleadings, it is assumed that this was the full, undiscounted amount of medical expenses incurred. At the time of treatment, Baker was insured under a Mail Handlers Benefit Plan health insurance policy. On February 7, 2007, Baker’s medical bill was sent by MMC to Mail Handlers for payment. MMC also sent a letter to Baker asking for information regarding any ^automobile insurance that might have been available, since he was involved in a motor vehicle accident. On February 23, 2007, the hospital received a letter from Baker’s attorney, Kirby Kelly, requesting an itemized bill. The record reveals that MMC quoted the full, undis-counted amount and also placed a lien against the proceeds of the lawsuit filed by Baker in which he sought damages, including medical expenses, from the adverse driver.
On June 19, 2007, Mail Handlers sent MMC a denial of the claim stating that they had not received a copy of the plan reimbursement agreement. The hospital followed up by telephone, and Mail Handlers stated that Baker had not returned the necessary subrogation forms; therefore, they denied the claim. Baker then called MMC on July 12, 2007, and indicated that the bill was being turned over to State Farm, the third party insurer, and that they would take care of the bill.
On August 20, 2007, after apparently settling the lawsuit, Kirby Kelly’s office called MMC and inquired into whether the hospital would reduce the bill by 50%. Ultimately, the hospital agreed to reduce the bill by 20%, and accepted $1,115.72 as payment in full. The remaining balance was written off as a loss by MMC.

Sheryl Wiginton

On March 31, 2008, Wiginton was involved in a motor vehicle accident in Min-den, Louisiana, resulting in serious injuries requiring medical attention. After being treated for her injuries, Wiginton incurred medical expenses in the amount of $2,087.00. Again, it is assumed that this was the full, undiscounted amount of medical expenses incurred. At the |4time of treatment, Wiginton was insured under a Blue Cross Blue Shield of Louisiana health insurance policy.
On April 7, 2008, MMC billed Blue Cross Blue Shield for Wiginton’s medical treatment. Blue Cross Blue Shield issued an explanation of benefits setting forth the patient’s liability of $505.66, which was the copayment plus the deductible. However, the record indicates that Wiginton paid $100.00 upon arrival at the emergency room, thus the balance of her liability was $405.66. She later paid $200.00 for a total payment by her of $300.00.
On November 20, 2008, Wiginton’s attorney, Kirby Kelly, called MMC and informed MMC that his office was going to send a check for Wiginton’s medical bills in the amount of $1,773.95. MMC received this check on December 3, 2008, and a note was made by MMC to refund the patient all monies except her liability under the insurance policy. Nevertheless, a clerical error was made on the part of MMC *924 whereby it never reimbursed Wiginton’s payments. It was not until three years later, and after the instant lawsuit was filed, that MMC realized its error and sent a check to Wiginton in the amount of $1,569.29.

Judyette Allen

Allen was involved in a motor vehicle accident on July 8, 2010, in Minden, Louisiana, resulting in serious injuries requiring medical attention. After being treated for her injuries, Allen incurred medical expenses in the amount of $2,756.95. At the time of treatment, Allen was also insured under a Blue Cross Blue Shield of Louisiana health insurance policy. | ¿However, Blue Cross Blue Shield was never billed for Allen’s medical treatment. Instead, on July 14, 2010, a copy of the bill and a lien for the full, undiscounted rate was sent by MMC to State Farm, the third party insurer. Soon thereafter, and after apparently being advised of the lien, Allen called MMC and informed the hospital that she was going to begin making payments on her account until the lawsuit settled with the party at fault.
In due time, State Farm settled the lawsuit pertaining to medical payments and sent a check to Allen’s attorney, Kirby Kelly. Although MMC’s name was on the check, the record indicates that Kirby Kelly refused to forward payment to the hospital until the liability portion of the lawsuit also settled. Since the liability portion of the suit did not settle for some time, Allen again began to make payments on the bill. Ultimately, Allen paid a total amount of $480.00.
Approximately one year later, on September 12, 2011, Allen called MMC and asked that Blue Cross Blue Shield be billed for the medical expenses. Blue Cross Blue Shield was billed and eventually paid MMC in February of 2012. Blue Cross Blue Shield paid $573.27, and the hospital refunded Allen her payment of $480.00.
As a result of these allegedly illegal billing practices, plaintiffs claim that MMC is liable unto petitioners and to those similarly situated for:
(1) repayment of all overpayments;
(2) mental anguish, worry and concern caused by wrongful collection practices and collections;
(3) loss of profits or use;
h(4) out-of-pocket expenses;
(5) emotional distress;
(6) all other damages allowed by law; and
(7) penalties, attorney fees, costs, and expenses.
Seeking class certification, plaintiffs filed a motion to certify class on September 28, 2011. MMC opposed class certification on various grounds. First, MMC argued that it cannot be found to have violated the Health Care Consumer Billing and Disclosure Protection Act for the years 2000 through 2003 since the law was not in existence during that time period. Second, because each plaintiffs’ situation was resolved differently, MMC took issue with a broad and over-encompassing class definition.
After a hearing on the plaintiffs’ motion, the trial court granted class certification. In a lengthy opinion, the trial court recognized that the class should not extend back to January 1, 2000, given the effective date of La. R.S. 18:1871 et seq., but otherwise granted class certification. The trial court also found merit in the defendant’s argument that the different circumstances pertaining to the individual plaintiffs was an obstacle to creating a blanket class. Therefore, the trial court reasoned that subclasses should be formed in accordance with the Third Circuit decision in Desselle *925 v. Acadian Ambulance Serv., Inc., 2011-742 (La.App.3d Cir.02/01/12), 83 So.3d 1243, writ denied, 2012-0518 (La.04/13/12), 85 So.3d 1253.
The common question, the court concluded, is whether MMC’s alleged billing practices violated the Health Care Consumer Billing and Disclosure Protection Act. The court stated that the evidence showed that |7the class of individuals is so numerous that joinder is impracticable, the issue is common to the class, and the claims of the representatives appointed are typical of the claims of the class. The court also found that it would be imprudent to try the cases individually as they may result in incompatible judgments. The court further stated that a class action is appropriate due to the possibility that many of the claims made by the class members may be small or nominal in nature. Finally, the court found that the class action procedure is superior to any other available method and certified the class as follows:
All persons currently and/or formerly residing in the United States of America from January 1, 2004, through December 31, 2011:
(1) Having “Health Insurance Coverage” [as defined by La. R.S. 22:1872(18) ] providing coverage for themselves or for others for whom they are legally responsible, with any “Health Insurance Issuer” [as defined by La. R.S. 22:1872(19) ] at the time “covered health care services” [as defined by La. R.S. 22:1872(8) ] were provided by an facility operated by PHC-Minden, L.P. d/b/a Minden Medical Center; and
(2) With which “Health Insurance Issuer” PHC-Minden, L.P. d/b/a Min-den Medical Center was a “contracted health care provider” at the time of service [as defined by La. R.S. 22:1872(6)]; and
(3)From whom PHC-Minden, L.P. d/b/a Minden Medical Center collected, and/or attempted to collect, the “Health Insurance Issuer’s Liability” [as defined by La. R.S. 22:1872(20) ], including, but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or insurer who may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage); and/or
[(4) From whom PHC-Minden, L.P. d/b/a Minden Medical Center collected, and/or attempted to collect, any amount in excess of the “Contracted Reimbursement Rate” [as defined by La. R.S. 22:1872(7) ], including but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or any insurer which may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underin-sured coverage, and/or medical payments coverage);
(5) From whom PHC-Minden, L.P. d/b/a Minden Medical Center collected, and/or attempted to collect, any amount without first receiving an explanation of benefits or other information from the Health Insurance Issuer setting forth the liability of the insured as required by La. R.S. 22:1874(A)(2) and (3).
As mentioned above, the trial court further divided the class into the following subclasses in accordance with Desselle, supra:
*926 “Attempt to Recover” subclass: A subclass of persons who received covered health care services, and who had health insurance coverage, and from whom Minden Medical Center attempted to recover any amount in excess of the “contracted reimbursement rate” from January 1, 2004, through December 31, 2011. “Payor” Subclass: A subclass of persons who received covered health care services, and who had health insurance coverage, and/or who paid Minden Medical Center in any manner including but not limited to liability insurance proceeds and/or from proceeds of a settlement or judgment, an amount in excess of the “contracted reimbursement rate” either directly and/or through their attorney and/or through a liability insurance carrier and/or any third party from January 1, 2004, through December 31, 2011.
The trial court then ordered that Pren-tiss Baker and Sheryl Wiginton be appointed class representatives for the “Payor” subclass, and Judyette Allen be appointed class representative for the “Attempt to Recover” subclass. J. Lee Hoffoss, Jr., Claude P. Devall, Derrick G. Earles, Lawrence |flJ. Centola, III, and Scott R. Bickford were appointed as class counsel. MMC appeals, and as its sole assignment of error, it contends that the trial court erred in granting class certification.
Discussion
A class action is a nontraditional litigation procedure that permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court. Brooks v. Union Pacific R.R. Co., 2008-2035 (La.05/22/09), 13 So.3d 546. The purpose and intent of the class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to persons who bring the action, but also to all others who are similarly situated. Id.
The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis in which the trial court must evaluate, quantify, and weigh the relevant factors to determine what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, traditional efficiency, and individual fairness. Id. In doing so, the trial court must actively inquire into every aspect of the case and not hesitate to require showings beyond the pleadings. Id. Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. Dupree v. Lafayette Ins. Co., 2009-2602 (La.11/30/10), 51 So.3d 673.
110Under Louisiana law, the requirements for class certification are set forth in La. C.C.P. art. 591. Article 591(A) provides five threshold prerequisites that must be met:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that join-der of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable *927 criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
In addition to these five prerequisites, La. C.C.P. art. 591(B) lists additional requirements that must be met, depending on the type of class action sought. In this case, the parties submit that the additional requirement that must be satisfied is found in La. C.C.P. art. 591(B)(3), which provides:
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superi- or to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
ln(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f)The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.
 A trial court has wide discretion in deciding whether to certify a class and the decision will not be overturned absent a finding of manifest error or abuse of discretion. Howard v. Willis-Knighton Med. Ctr., 40,634 (La.App.2d Cir.03/08/06), 924 So.2d 1245, writs denied, 2006-0850 (La.06/14/06), 929 So.2d 1268, and 2006-1064 (La.06/14/06), 929 So.2d 1271. Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification, if later developments during the course of the trial so require. McCastle v. Rollins Envtl. Servs. of La., Inc., 456 So.2d 612 (La.1984).
The burden of establishing that the statutory criteria are met falls on the party seeking to maintain the class action. Howard, supra. Thus, in this case, the plaintiffs were required to prove the five prerequisites of La. |12C.C.P. art. 591(A), namely: numerosity, commonality, typicality, adequacy of the representative parties, and objectively definable class. But also, under La. C.C.P. art. 591(B), the plaintiffs were required to prove that common questions of law or fact predominate over individual issues and that the class action is superior to any other method for resolving the controversy fairly and efficiently. Id.
Prior to our analysis, it is necessary to provide an overview of the recent developments of the Health Care Consumer Billing and Disclosure Protection Act. In general, the Act provides that a contracted health care provider, such as MMC, is prohibited from discount billing, dual bill *928 ing, attempting to collect from, or collecting from an insured a “health insurance issuer liability” or any amount in excess of the contracted reimbursement rate for covered health care services. La. R.S. 22:1874. A health insurance issuer liability is defined as the “contracted reimbursement rate” reduced by the patient’s responsibility, which includes coinsurance, copayments, deductibles, or any other amounts identified by the health insurance issuer as an amount for which the enrollee or insured is liable for the covered service. La. R.S. 22:1872(20)(b). The contracted reimbursement rate is defined as the aggregate maximum amount that a contracted health care provider has agreed to accept from all sources for provision of covered health care services under the health insurance coverage applicable to the enrollee or insured. La. R.S. 22:1872(7). Thus, under the Act, MMC is prohibited from collecting or attempting to collect any amount in excess of | isthe contracted reimbursement rate from a patient who is covered under a health insurance policy.
Various plaintiffs have armed themselves with this language and have brought lawsuits all across this State against hospitals such as MMC, alleging violations under the Act. Most recently, in Anderson v. Ochsner Health Syst, 2013-2970 (La.07/01/14), - So.3d -, 2014 WL 2937101, the Louisiana Supreme Court was asked to determine whether an individual plaintiff is afforded a private right of action under La. R.S. 22:1871 et seq. Prior to Ochsner, supra, defendants were arguing that based on the language found in the Act, the exclusive method for a plaintiff to obtain relief was via the Attorney’s General Office and the Louisiana Unfair Trade and Practices Act. The Louisiana Supreme Court rejected this argument, and reached the conclusion that both an express and implied private right of action is available under the Act. The Court first found that the legislative intent is such to support the existence of a private right of action and further held that the practice of asserting a medical lien is equivalent to “maintaining an action at law,” which in turn triggers an express right of action for an individual insured plaintiff to bring a lawsuit.
However, despite the recent influx of these cases, no jurisprudence exists whatsoever in regard to the actual merits of a claim brought as the result of alleged violations under the Act. Although the Louisiana Supreme Court has provided guidance in that plaintiffs have a private right of action under La. R.S. 22:1871 et seq. and that the practice of asserting a medical lien constitutes “maintaining an action at law,” many unanswered questions 114remain, including those pertaining to what damages a successful plaintiff would be entitled to receive. For example, in the instant matter, plaintiffs expressly requested mental anguish as a component of their general damages. However, the law is not clear as to whether a plaintiff would even be entitled to nonpecuniary damages in a setting such as this arising from contractual relations between an insured, his health care provider, and a hospital. See La. C.C. art. 1998. Moreover, as the record now stands, there are no specific allegations demonstrating the calculation of pecuniary losses to any of the named plaintiffs. Without knowing how the parties’ losses arise and are calculated, it is difficult to group them together in a common class.
Additionally, we note that despite the Supreme Court’s ruling in Ochsner, supra, the Court made no attempt to measure the use by a health care provider of the lien right afforded under La. R.S. 9:4752 against the provisions of the Health Care Consumer Billing and Disclosure Protec *929 tion Act. Whether these two provisions by the legislature can be harmonized or whether La. R.S. 22:1871 et seq. now prohibits a hospital’s use of the lien statute remains a difficult question in our law. See La. Atty. Gen. Op. No. 05-0056, 2005 WL 1429238 (La.A.G.05/17/05).
Yet, faced with this undeveloped legal storm, we are asked to approve certification of certain classes of plaintiffs when little guidance is available. To reiterate the legal principles outlined above, a court must go beyond the pleadings, and understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of | ^certification issues. Here, we find it impossible to do so given the uncharted territory of litigation associated with actions brought pursuant to La. R.S. 22:1871 et seq.
As pointed out by MMC at trial and on appeal, Louisiana courts will deny class certification when presented with novel and untested legal theories. Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.09/09/97), 703 So.2d 542; see also Banks v. New York Life Ins. Co., 98-0551 (La.12/07/98), 722 So.2d 990, 995 (“Federal courts, and this court will not certify a class where the theory of law is novel and untested”). In Ford, supra, at 15, 703 So.2d 542, citing Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996), the Louisiana Supreme Court stated “[T]he court must have experience with a tort in the form of several individual actions before it can certify issues in a way that preserves judicial resources.” Applying this same reasoning to the matter before us, we too find that courts must have experience with lawsuits brought pursuant to the Health Care Consumer Billing and Disclosure Protection Act before we can certify issues in a way that preserves judicial resources. In fact, the Desselle opinion, which was relied on so heavily by the trial court in this case, was rendered prior to an understanding of whether a plaintiff even had a private right of action under the Act.
Accordingly, we do not find that a class action is the superior procedural method for resolving this controversy. Unfortunately, until the legislature or courts of this state clarify the remaining legal issues 11fisurrounding the Health Care Consumer Billing and Disclosure Protection Act, only then will this claim be proper as a class action.
Having found class certification to be improper, we do not find it necessary to proceed further in our analysis; therefore, we pretermit our discussion as to whether plaintiffs met their burden of proving the remaining elements under La. C.C.P. art. 591(A) and (B).
Conclusion
So considering, the trial court’s judgment certifying class certification in favor of Prentiss Baker, Sheryl Wiginton, and Judyette Allen is reversed. All costs of this appeal are assessed to plaintiffs.
REVERSED.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, MOORE, LOLLEY and PITMAN, JJ.
Rehearing denied.

. Since the institution of this lawsuit, Prentiss Baker died and his widow, Dorothy Baker, has been substituted as the party plaintiff.