# Supreme Court of Louisiana

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**BY KNOLL, J.**:

2014-C -2243    PRENTISS BAKER AND SHERYL WIGINTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. PHC-MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER (Parish of Webster)

For these reasons, we reverse the judgment of the Court of Appeal and hereby reinstate the judgment of the District Court. This case is remanded to the District Court for further proceedings REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED AND REMANDED.

GUIDRY, J., additionally concurs and assigns reasons.

05/05/15

# SUPREME COURT OF LOUISIANA

# NO. 2014-C-2243

## PRENTISS BAKER AND SHERYL WIGINTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

## VERSUS

## PHC-MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF WEBSTER

**KNOLL, JUSTICE**

We granted this writ application to resolve a conflict among the appellate courts of this state on the issue of whether a class action is the superior method for adjudicating actions brought pursuant to the Health Care Consumer Billing and Disclosure Protection Act, La. Rev. Stat. § 22:1871 *et seq*. ("Balance Billing Act"). *Baker v. PHC-Minden, L.P.*, 14-2243 (La. 1/16/15), __ So.3d __. Across the state, plaintiffs are filing these actions against health care providers from whom they sought treatment following automobile accidents and with whom their health care insurers had contracted reimbursement rates for the services rendered. At issue is the legality of these providers' policy of collecting or attempting to collect the undiscounted rate from the insured if a liability insurer may be liable, implemented through the filing of medical liens against plaintiffs' lawsuits and settlements pursuant to the health care provider lien statute, La. Rev. Stat. § 9:4752. A review of the jurisprudence reveals plaintiffs in the Third Circuit Court of Appeal proceed pursuant to our class action provisions, while plaintiffs in the Second Circuit Court of Appeal have been denied class certification. After reviewing the record and the applicable law, we find the class action is superior to any other available method for a fair and efficient adjudication of the common controversy over the disputed

billing and lien practices. Accordingly, we reverse the judgment of the court of appeal, Second Circuit. Finding all other requirements for class certification properly met, we reinstate the judgment of the trial court.

## FACTS

On July 13, 2011, plaintiffs Prentiss Baker,[1] Sheryl Wiginton, and Judyette Allen filed this class action proceeding, alleging PHC-Minden, L.P. d/b/a Minden Medical Center ("Minden") engaged in unlawful billing practices by billing them in an amount in excess of the agreed upon rate negotiated between the hospital and plaintiffs' respective insurers. Specifically, plaintiffs alleged Minden had a collection policy in effect since at least 2000 for billing insured patients involved in automobile accidents where a third party was liable for the crash. This collection policy was implemented across-the-board, regardless of the health insurance issuer involved, through the following actions:

1. Upon admission or soon thereafter, Minden collected information from the patient about the offending driver's liability insurance and the patient's own automobile insurance;

2. If the patient did not know the information upon admission, Minden sent a form letter to the patient requesting the patient get the liability insurance information and contact Minden with that information;

3. Once the liability insurance information was obtained or the patient's attorney was known, Minden would send a lien pursuant to La. Rev. Stat. § 9:4752 to the liability insurer and the patient's attorney seeking to collect from the patient's damage settlement the full and undiscounted rate.

4. If the time delays were such that Minden was close to running out of time to file with the patient's health insurance, Minden would only then file a claim with the health insurance company, but not before it first asserted its lien on the patient's settlement through the liability insurance company and the patient's attorney.

---

[1] Since the institution of this lawsuit, Prentiss Baker died, and his widow, Dorothy Baker, has been substituted as the party plaintiff.

2

Even if Minden filed a claim with and received payment through the health insurance company, Minden still allegedly attempted to collect the full rate from the patient's settlement through the patient's attorney and the liability insurer using medical liens. Plaintiffs allege hundreds of other patients have been subjected to this collection policy, which they argue violates the Balance Billing Act. Below is a summary of the specific manner in which the collection policy was allegedly applied to the named plaintiffs individually.

### *Prentiss Baker*

On January 31, 2007, Baker was admitted to Minden's emergency room for injuries sustained in an automobile accident in Minden, Louisiana, and incurred medical expenses in the undiscounted amount of $1,394.56. At the time of treatment, Baker was insured under a Mail Handlers Benefit Plan ("Mail Handlers") health insurance policy. On February 7, 2007, Baker's medical bill was sent by Minden to Mail Handlers for payment. Because he was involved in an automobile accident, Minden also sent a letter to Baker asking for information regarding any automobile insurance that might have been available. On February 23, 2007, the hospital received a letter from Baker's attorney, Kirby Kelly, requesting an itemized bill. The record reveals Minden quoted the full, undiscounted amount and also placed a lien against the proceeds of the lawsuit filed by Baker in which he sought damages, including medical expenses, from the adverse driver.

On June 19, 2007, Mail Handlers sent Minden a denial of the claim stating it had not received a copy of the plan reimbursement agreement. The hospital followed up by telephone, and Mail Handlers stated Baker had not returned the necessary subrogation forms; therefore, it denied the claim. Baker then called

Minden on July 12, 2007, and indicated the bill was being turned over to State Farm, the third party insurer, and they would take care of the bill.

After apparently settling the lawsuit, Kirby Kelly's office called Minden on August 20, 2007, and inquired into whether the hospital would reduce the bill by 50%. Ultimately, the hospital agreed to reduce the bill by 20% and accepted $1,115.72 as payment in full. The remaining balance was written off as a loss by Minden.

### Sheryl Wiginton

Wiginton presented at Minden's emergency room on March 31, 2008, for injuries sustained in an automobile accident in Minden, Louisiana, and incurred medical expenses in the undiscounted amount of $2,087. At the time of treatment, Wiginton was insured under a Blue Cross Blue Shield of Louisiana ("Blue Cross") health insurance policy.

On April 7, 2008, Minden billed Blue Cross for her medical treatment. Blue Cross issued an explanation of benefits setting forth the patient's liability of $505.66, which was the copayment plus the deductible. However, the record indicates Wiginton paid $100 upon arrival at the emergency room, thus the balance of her liability was $405.66. She later paid $200 for a total payment by her of $300. As per its collection policy, the hospital also filed a lien against the proceeds of her lawsuit for the full undiscounted amount.

Wiginton's attorney, Kirby Kelly, called Minden on November 20, 2008, and informed Minden his office was going to send a check for Wiginton's medical bills in the amount of $1,773.95. Minden received this check on December 3, 2008, and a note was made by Minden to refund the patient all monies except her responsibility (deductible) under the insurance policy. Nevertheless, a clerical error was made on the part of Minden whereby it never reimbursed Wiginton's

4

payments. It was not until three years later, and after the instant lawsuit was filed, that Minden realized its error and sent a check to Wiginton in the amount of $1,568.29.

*Judyette Allen*

Allen was involved in an automobile accident on July 8, 2010, in Minden, Louisiana, and presented at the Minden emergency room, seeking medical attention. After being treated for her injuries, Allen incurred medical expenses in the undiscounted amount of $2,756.95. At the time of treatment, Allen was also insured under a Blue Cross health insurance policy. However, Blue Cross was never billed for Allen's medical treatment. Instead, on July 14, 2010, a copy of the bill and a lien for the full, undiscounted rate was sent by Minden to State Farm, the third party insurer. Soon thereafter, and after apparently being advised of the lien, Allen called Minden and informed the hospital she was going to begin making payments on her account until the lawsuit settled with the party at fault.

In due time, State Farm settled the lawsuit pertaining to medical payments and sent a check to Allen's attorney, Kirby Kelly. Although Minden's name was on the check, the record indicates Kirby Kelly refused to forward payment to the hospital until the liability portion of the lawsuit also settled. Because the liability portion of the suit did not settle for some time, Allen again began to make payments on the bill. Ultimately, Allen paid a total amount of $480.

Approximately one year later, on September 12, 2011, Allen called Minden and asked that Blue Cross be billed for the medical expenses. Blue Cross eventually paid Minden $573.27 in February of 2012, and the hospital refunded Allen her payment of $480.

As a result of these allegedly illegal billing practices, plaintiffs claim Minden is liable unto petitioners and to those similarly situated for:

5

(1) repayment of all overpayments;

(2) mental anguish, worry and concern caused by wrongful collection practices and collections;

(3) loss of profits or use;

(4) out-of-pocket expenses;

(5) emotional distress;

(6) all other damages allowed by law; and

(7) penalties, attorney fees, costs, and expenses.

Seeking class certification, plaintiffs filed a motion to certify class on September 28, 2011. Minden opposed class certification on various grounds. First, Minden argued it cannot be found to have violated the Balance Billing Act for the years 2000 through 2003 since the law was not in existence during that time period, only having taken effect on January 1, 2004. Second, because each plaintiff's situation was resolved differently, Minden took issue with a broad and over-encompassing class definition.

After a hearing on the plaintiffs' motion, the trial court granted class certification. In a lengthy opinion, the trial court recognized the class should only extend back to January 1, 2004, given the effective date of the Balance Billing Act, but otherwise granted class certification. The trial court also found merit in defendant's argument the different circumstances pertaining to the individual plaintiffs was an obstacle to creating a blanket class and reasoned, therefore, subclasses should be formed in accordance with the Third Circuit decision in *Desselle v. Acadian Ambulance Serv., Inc.*, 11-742 (La. App. 3 Cir. 02/01/12), 83 So.3d 1243, *writ denied*, 12-0518 (La. 04/13/12), 85 So.3d 1253.

The trial court concluded the common question is whether Minden's alleged billing practices violated the Balance Billing Act. It also found the evidence showed: (1) the class of individuals is so numerous that joinder is impracticable, (2) the issue is common to the class, (3) the claims of the representatives appointed are typical of the claims of the class, and (4) the named representatives adequately

6

represent the class. Finding the class action procedure superior to any other available method for resolving the single, paramount issue concerning Minden's billing practices, the trial court reasoned it would be imprudent to try the cases individually as they may result in incompatible judgments, and class action is appropriate due to the possibility that many of the claims made by the class members may be small or nominal in nature.

Accordingly, the trial court certified the following class:

All persons currently and/or formerly residing in the United States of America from January 1, 2004 through December 31, 2011:

(1) Having "Health Insurance Coverage" [as defined by La. R.S. 22:1872(18)] providing coverage for themselves or for others for whom they are legally responsible, with any "Health Insurance Issuer" [as defined by La. R.S. 22:1872(19)] at the time "covered health care services" [as defined by La. R.S. 22:1872(8)] were provided by any facility operated by PHC–MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER; and

(2) With which "Health Insurance Issuer" PHC–MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER was a "contracted health care provider" at the time of service [as defined by La. R.S. 22:1872(6)]; and

(3) From whom PHC–MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER collected, and/or attempted to collect, the "Health Insurance Issuer's Liability" [as defined by La. R.S. 22:1872(20)], including, but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or insurer who may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage); and/or

(4) From whom PHC–MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER collected, and/or attempted to collect, any amount in excess of the "Contracted Reimbursement Rate" [as defined by La. R.S. 22:1872(7)], including but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or any insurer which may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage);

(5) From whom PHC–MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER collected, and/or attempted to collect, any amount without first receiving an explanation of benefits or other information from the Health Insurance Issuer setting forth the liability of the insured as required by La. R.S. 22:1874(A)(2) and (3).

The class is composed of the following subclasses:

"Attempt to Recover" subclass: A subclass of persons who received covered health care services, and who had health insurance coverage, and from whom Minden Medical Center attempted to recover any amount in excess of the "contracted reimbursement rate" from January 1, 2004, through December 31, 2011.

"Payor" Subclass: A subclass of persons who received covered health care services, and who had health insurance coverage, and/or who paid Minden Medical Center in any manner including but not limited to liability insurance proceeds and/or from proceeds of a settlement or judgment, an amount in excess of the "contracted reimbursement rate" either directly and/or through their attorney and/or through a liability insurance carrier and/or any third party from January 1, 2004, through December 31, 2011.

Finally, the trial court appointed Baker and Wiginton class representatives for the "Payor" subclass, and Allen class representative for the "Attempt to Recover" subclass.

On appeal, the Second Circuit Court of Appeal reversed, finding a class action is not the superior procedural method for resolving the controversy herein, "given the unchartered territory of litigation associated with actions brought pursuant to [the Balance Billing Act]." *Baker v. PHC-Minden*, 49,122, p. 15 (La. App. 2 Cir. 8/13/14), 146 So.3d 921, 929. In so holding, the appellate court reasoned that while this Court recently in *Anderson v. Ochsner Health Sys.*, 13-2970 (La. 7/1/14), __ So.3d __, has recognized a private right of action under the Balance Billing Act and has held the practice of asserting a medical lien constitutes "maintaining an action at law," "many unanswered questions remain, including those pertaining to what damages a successful plaintiff would be entitled to receive." *Baker*, 49,122 at pp. 13-14, 146 So.3d at 928. And without knowing how

8

the parties' losses arise and are calculated, the appellate court found it difficult to group them together in a common class. *Id.*

It noted this Court has not addressed whether the Balance Billing Act and the lien right afforded providers under La. Rev. Stat. § 9:4752 can be harmonized or whether such liens are now prohibited by the Balance Billing Act. *Id.* (citing La. Atty. Gen. Op. No. 05-0056, 2005 WL 1429238 (La.A.G.05/17/05). When faced with such "undeveloped legal storms" where little guidance is available, the appellate court commented:

> Louisiana courts will deny class certification when presented with novel and untested legal theories. *Ford v. Murphy Oil U.S.A., Inc.*, 96–2913 (La.09/09/97), 703 So.2d 542; *see also Banks v. New York Life Ins. Co.*, 98–0551 (La.12/07/98), 722 So.2d 990, 995 ("Federal courts, and this court will not certify a class where the theory of law is novel and untested"). In *Ford*, *supra*, at 15, 703 So.2d 542, *citing Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996), the Louisiana Supreme Court stated "[T]he court must have experience with a tort in the form of several individual actions before it can certify issues in a way that preserves judicial resources."

*Id.* at p. 15, 146 So.3d at 929.

Applying this reasoning, the Second Circuit concluded courts must have experience with lawsuits of this nature before it can certify issues in a way that preserves judicial resources, and only when "the legislature or courts of this state clarify the remaining legal issues surrounding the [Balance Billing Act]" will this claim be proper as a class action. *Id.* The court then pretermitted all remaining issues on appeal.

## DISCUSSION

As we previously stated, there exists a split among the circuit courts of appeal on the superiority of the class action where the common question is the legality under the Balance Billing Act of a health care provider's practice of filing liens seeking the undiscounted rates before or even after billing the patient's

9

insurer. While the Third Circuit has affirmed certification of these classes, thus permitting plaintiffs in those circuits to proceed as class actions, *Vallare v. Ville Platte Medical Center, LLC*, 14-261 (La. App. 3 Cir. 11/5/14), 151 So.3d 984; *Desselle*, 11-742 at p. 14, 83 So.3d at 1253, the Second Circuit has now held just the opposite, decertifying the class given the novel and untested nature of the theory advanced, *Baker*, 49,122 at p. 15, 146 So.3d at 929. Consequently, it falls upon this Court to resolve the split, but first an overview of the procedural device at the heart of this matter is warranted.

### Class Actions

A class action is "a nontraditional litigation procedure that permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court." *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913 (La. 9/9/97), 703 So.2d 542, 544. Its purpose and intent is to adjudicate and obtain *res judicata* effect on all common issues applicable to persons who bring the action, as well as to all others similarly situated. *Brooks v. Union Pacific R. Co.*, 08-2035, p. 10 (La. 05/22/09), 13 So.3d 546, 554.

The only issue to be considered by the trial court when ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of such action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the

statutory requirements have been met. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153 (1974).[2]

This determination of whether a class action meets the requirements imposed by law involves a rigorous analysis in which the trial court "must evaluate, quantify, and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness." *McCastle v. Rollins Environmental Services of Louisiana, Inc.*, 456 So.2d 612, 618 (La. 1984). Doing so, the trial court must actively inquire into every aspect of the case and not hesitate to require showings beyond the pleadings. *Brooks*, 08-2035 at p. 10, 13 So.3d at 554. "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Dupree v. Lafayette Ins. Co.*, 09-2602, p. 7 (La. 11/30/10), 51 So.3d 673, 680.

Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is ***always*** subject to modification or decertification, "if later developments during the course of the trial so require." *McCastle*, 456 So.2d at 620. To that end, La. Code. Civ. Proc. art. 592(A)(3)(d) provides the trial court "may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class

---

[2] Interestingly, the Supreme Court further noted:

> … a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

*Id.*

action." La. Code. Civ. Proc. art. 592(A)(3)(d). Nonetheless, the trial court should evaluate the case closely before certifying the class in light of the consequent burdens of giving notice and additional discovery. *See Dupree*, 09-2602 at p. 7, 51 So.3d at 680.

A trial court has wide discretion in deciding whether to certify a class. *Brooks*, 08-2035 at p. 10, 13 So.3d at 554. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. *Stobart v. State, though Department of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard. *Dupree*, 09-2602 at p. 7, 51 So.3d at 680. Implicit therein "is recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Brooks*, 08-2035 at p. 11, 13 So.3d at 554.

Under Louisiana law, the requirements for class certification are set forth in La. Code Civ. Proc. art. 591. Article 591(A) provides five threshold prerequisites, often referred to as numerosity, commonality, typicality, adequacy of representation, and objective definability of class:

> A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> > (1) The class is so numerous that joinder of all members is impracticable.
> > (2) There are questions of law or fact common to the class.
> > (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
> > (4) The representative parties will fairly and adequately protect the interests of the class.
> > (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court

to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

Once these five prerequisites have been met, La. Code Civ. Proc. art. 591(B) lists three additional criteria, one of which must also be satisfied for certification depending on the type of class action sought. Here, the parties submit the additional requirement that must be met for certification is set forth in La. Code Civ. Proc. art. 591(B)(3), which provides:

> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
>
> (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
> (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (c) The desirability or undesirability of concentrating the litigation in the particular forum;
> (d) The difficulties likely to be encountered in the management of a class action;
> (e) The practical ability of individual class members to pursue their claims without class certification;
> (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

The Legislature has specifically provided, emphasizing the commonality and predominance requirements, that class "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." La. Code. Civ. Proc. art. 591(C); *see also Ford*, 703 So.2d at 549 (former La. Code Civ. Proc. art. 593.1(C) prohibits class certification when too many individual liability issues exist that could not be tried separately). Nevertheless, where certification is maintained, "the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof

individual to a member of the class." La. Code Civ. Proc. art. 591(C). Thus, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." *Bartlett v. Browning-Ferris Industries Chemical Services, Inc.*, 99-0494 (La. 11/12/99), 759 So.2d 755, 756.

The burden of establishing the statutory criteria have been satisfied falls on the party seeking to maintain the class action. *Dupree*, 09-2602 at p. 10, 51 So.3d at 682. Thus here, the plaintiffs were required to prove the five prerequisites of La. Code Civ. Proc. art. 591(A), namely numerosity, commonality, typicality, adequacy of the representative parties, and objectively definable class. Likewise, they were required to prove common questions of law or fact predominate over individual issues and the class action is superior to any other method for resolving the controversy fairly and efficiently under La. Code Civ. Proc. art. 591(B).

Because the appellate court ruled solely on the superiority, or lack thereof, of the class action to resolve the common question regarding the legality of Minden's lien practices under the Balance Billing Act, we begin our review by addressing this criteria. However, to properly do so, we find it necessary to first review our holding in *Anderson* from which these recent class actions arise.

In *Anderson*, this Court was asked to determine whether an individual plaintiff is afforded a private right of action under the Balance Billing Act. Similar to our plaintiffs herein, the plaintiff in *Anderson* alleged she was injured in an automobile accident caused by a third party, after which she received medical treatment at an Ochsner facility. Although Anderson was insured by UnitedHealthcare and presented proof of insurance, Ochsner refused to file a claim

14

with her insurer. Instead, Ochsner sent a letter to her attorney, asserting a medical lien for the full amount of undiscounted charges.

Thereafter, Anderson filed a putative class action against Ochsner, seeking, among other remedies, damages arising from Ochsner's billing practices and claiming Ochsner's actions violated the Balance Billing Act. In response, Ochsner filed a motion for summary judgment, arguing no private right of action exists under the Balance Billing Act. The trial court denied Ochsner's motion for summary judgment, and the appellate court denied writs. *Anderson v. Ochsner Health System*, 13-798 (La. App. 5 Cir. 11/21/13), __ So.3d __.

After examining the relevant statutes, we found Ochsner's act of sending a lien letter to Anderson's attorney constituted "maintaining an action at law." *Anderson*, 13-2970 at p. 11. Specifically, we reasoned La. Rev. Stat. § 9:4752 authorizes health care providers to recover "reasonable charges or fees" from third party tortfeasors through the use of "medical liens," providing:

> A health care provider … that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees … on the net amount payable to the injured person … out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person….

La. Rev. Stat. § 9:4752. Pursuant to La. Rev. Stat. § 9:4753(A), the liens become effective "if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice ... is delivered by certified mail, return receipt requested, or by facsimile transmission with proof of receipt of transmission by the interested health care provider ..." to the "injured person...." Because La. Rev. Stat. § 9:4754 then makes anyone who interferes with the privilege liable for the amount of the privilege, we found a lien

15

in this context operates automatically as a matter of law with legal consequences attaching when the lien is ignored, and thus, its use constituted an action at law. *Anderson*, 13-2970 at p. 11.

Having found an action at law existed, we then turned to the language in the Balance Billing Act granting a right to sue:

> No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs….

La. Rev. Stat. § 22:1874(B). Concluding the explicit right to recover "all costs incurred" inclusive of attorney fees and court costs was a clear recognition that a private cause of action is available, we found:

> Anderson is expressly given a private right of action under these facts by virtue of La. R.S. 22:1874(B). Having found an express right of action affording Anderson an avenue for recourse, we purposefully extend our holding to find an implied right of action as well. In so doing, we are cognizant that offenders may interpret a limited holding to mean that other methods of demanding payment from insured patients are allowed under the Balance Billing Act. We intentionally address and forego that possibility.

*Anderson*, 13-2970 at p. 11.

Though numerous actions similar to Anderson's and plaintiffs' herein have recently been filed, the Second Circuit viewed the lack of any jurisprudence "whatsoever" in regard to the actual merits of a claim brought under the Balance Billing Act as an insurmountable obstacle. The Third Circuit, however, has taken a completely contrary view, in their own words, "respectfully disagree[ing] with the second circuit's assertion that 'novel and untested legal theories' are involved in the determination of whether a billing practice violates La. R.S. 22:1874." *Vallere*, 14-261 at p. 8, 151 So.3d at 989.

In *Vallere*, an insured, just like our plaintiffs here, sought class certification against the hospital where she was treated for injuries sustained in an automobile accident, alleging that hospital's lien practice also violated the Balance Billing Act. After the trial court certified the class, the defendants challenged the certification on appeal by advancing the novel and untested argument relied upon by the Second Circuit. However, the Third Circuit summarily rejected the claim in light of its previous decision in *Desselle* upon which the trial court in this case relied. *Vallare*, 14-261 at p. 8, 151 So.3d at 989-90.

Interestingly, the *Desselle* plaintiffs were also insureds who brought a class action under the Balance Billing Act, challenging the lien/billing practices of the health care provider that rendered them assistance following their automobile accidents—Acadian Ambulance. The Third Circuit affirmed certification of the class therein, *Deselle*, 11-742 at p. 14, 83 So.3d at 1253, and this Court denied writs two years before we rendered our decision in *Anderson*. *Deselle v. Acadian Ambulance Service, Inc.*, 12-518 (La. 4/13/12), 85 So.3d 1253. This along with *Baker's* recognition that "plaintiffs have armed themselves with [*Anderson's*] language and have brought lawsuits all across this State against hospitals such as [Minden], alleging violations under the Act," led the *Vallare* court to conclude the issue is hardly novel. *Vallare*, 14-261 at p. 8, 151 So.3d at 989-90 (quoting *Baker*, 49,122 at p. 13, 146 So.3d at 928). We agree.

Clearly, *Anderson* held insureds in these circumstances have a direct action against their health care providers under the Balance Billing Act for "all costs incurred." *Anderson*, 13-2970 at p. 11. More importantly, though, we note with significance class action certification is *purely procedural*. What is of primary concern in the certification proceeding is simply whether the plaintiffs have met the statutory requirements to become a class action, *not* the merits of the

17

underlying litigation. *Eisen*, *supra*; *see also supra* note 2. It is the Second Circuit's focus upon the merits of the common issue that ultimately led it into legal error and resulted in its inappropriate analysis. Rather, a court's focus on review must be on the requirements and whether the evidence establishes the procedural device is appropriate.

As to the superiority requirement, the record shows there is little proof on liability or causation necessary in this case individual to each plaintiff. Their claims do not require highly individualized inquiries into the cause of the damages. The alleged damages were caused by Minden's acting pursuant to its collection policy and procedure. The eventual question for the factfinder is whether or not Minden's actions violated the Balance Billing Act. Once the factfinder determines Minden's actions pursuant to its collection policy did or did not violate the Balance Billing Act, liability and causation for all class members is decided. Thus, this case fundamentally revolves around the interplay of Minden's collection policy with the Balance Billing Act, the resolution of which will be conclusive to all.

If the court eventually resolves this single, paramount issue in plaintiffs' favor, the remaining issues individual to class members relate to the calculation of damages. It is only then the court will need to determine what damages are awardable under the Balance Billing Act. If the court resolves the paramount issue in defendant's favor, any question regarding damages will be rendered moot.

Moreover, there is no indication the consideration of the billing issue, particular to the plaintiffs, would require individual trials or be unduly burdensome. To the contrary, the evidence shows many claims may be small or nominal in nature, rendering individual actions financially impractical, if not impossible. Accordingly, we find the evidence does reasonably show the class action is the superior method for adjudication as the common question herein

18

would be most efficiently answered in the context of a class action suit. We therefore find the trial court did not manifestly err in its findings as to this issue. Likewise, we find no error in its factual findings on the remaining five prerequisites—numerosity, commonality, typicality, adequacy of representation, and definability.

*Numerosity*

The first requirement for class certification, often referred to as "numerosity," is determined based upon the facts and circumstances of each individual case. This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit. Kent A. Lambert, "Certification of Class Actions in Louisiana," 58 La.L.Rev. 1085, 1114 (Summer 1998).

There is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. *Dumas v. Angus Chemical Co.*, 25,632 (La. App. 2 Cir. 3/30/94), 635 So.2d 446, 450, *writ denied*, 94-1120 (La. 6/24/94), 640 So.2d 1349; *O'Halleron v. L.E.C., Inc.*, 471 So.2d 752, 755 (La. App. 1st Cir. 1985). Likewise, the numerosity element may not be met by simply alleging a large number of potential claimants exist. *Boyd v. Allied Signal, Inc.*, 03-1840, pp. 11-12 (La. App. 1 Cir. 12/30/04), 898 So.2d 450, 457, *writ denied*, 05-0191 (La. 4/1/05), 897 So.2d 606. While the determination of numerosity is in part based upon the number of putative class members, it is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claim. *Davis v. American Home Products Corp.*, 02-0942, p. 19 (La. App. 4 Cir. 3/26/03),

844 So.2d 242, 257, *writ denied*, 03-1180 (La. 6/27/03), 847 So.2d 1279. Ultimately, to meet this requirement, the plaintiff must show joinder is impractical, but, at the same time, there is a definable group of aggrieved persons. *Dumas*, 635 So.2d at 450.

Grace Askew, Minden's representative, testified Minden subjected the liability accident billing procedure to well over 100 patients during the relevant time period of 2004-2011. She further indicated, given proper parameters, the hospital's computerized billing system could provide a list of patients who fit the class definition. Although Minden argues plaintiffs did not introduce any evidence the scenario encountered by each of the three named plaintiffs occurred more than 100 times, we agree with the trial court a sufficient number of potential class members exist so as to make joinder impracticable, and given many of the claims may be small or nominal in nature, we likewise find the numerosity element has been satisfied.

### *Commonality*

The commonality prerequisite requires a party seeking class certification to show that "[t]here are questions of law or fact common to the class." La. Code Civ. Proc. art. 591(A)(2). However, the mere existence of common questions alone will not satisfy the commonality requirement. *Price v. Martin*, 11-853, p. 10 (La. 12/6/11), 79 So.3d 960, 969. Rather, plaintiffs seeking to satisfy this requirement must demonstrate their "claims depend on a common contention, and that common contention must be one capable of class-wide resolution—one where the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).

The record is fairly straightforward in a factual sense as to this prerequisite and again reasonably supports the trial court's finding. Each plaintiff in the instant case will have been injured in an automobile accident and will have received treatment at Minden. Each will be covered by a health insurance policy issued by a health insurance provider with whom Minden was a contracted health care provider. As to each patient, Minden will have determined a third party was at fault in the accident, and pursuant to its collection policy, Minden will have pursued payment at a rate exceeding the contracted rate with the health insurer. Notwithstanding, the plaintiffs responded to the demand differently, each claim shares a common issue that is central to the validity of all the claims: whether Minden's collection policy violates the Balance Billing Act. Accordingly, the record reasonably supports the trial court's finding plaintiffs met the commonality burden.

### Typicality

The third element is whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. La. Code Civ. Proc. art. 591(A)(3). This element determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. Lambert, *supra*, at 1094. A plaintiff's claim is typical if it rises out of the same event, practice, or course of conduct giving rise to the claims of the other class members and those claims arise from the same legal theory. *Id.*; *Deselle*, 11-742 at p. 9, 83 So.3d at 1251.

Although Minden argued the testimony of the named plaintiffs shows it did not act uniformly as to all patients and that plaintiffs are insured by different insurers with different agreements with the hospital, Minden's representative

testified the complained-of procedure was uniform across-the-board from 2000 to 2011. Her testimony does reasonably support both the trial court's belief the hospital consistently applied this collection policy to all patients involved in automobile accidents wherein a third party was found to be at fault and its finding the typicality element was satisfied.

### *Adequacy of Representation*

The fourth element plaintiffs must establish is whether the representative parties will fairly and adequately protect the interest of the class. The following are "factors which may be relevant" to this inquiry:

> (1) The representative must be able to demonstrate that he or she suffered an actual-vis-à-vis hypothetical-injury;
>
> (2) The representative should possess first hand knowledge or experience of the conduct at issue in the litigation;
>
> (3) The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and
>
> (4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.

Lambert, *supra*, at 1117; *Howard v. Willis-Knighton Medical Center*, 40,634, pp. 36-37 (La. App. 2 Cir. 3/8/06), 924 So.2d 1245, 1265, *writ denied*, 06-850 (La. 6/14/06), 929 So.2d 1268; *see also Desselle*, 11-742 at p. 10, 83 So.3d at 1251 (three prong test consists of (1) the absence of conflicting or antagonistic claims between the representatives and other class members; (2) the representatives' sufficient interest in the outcome to insure vigorous advocacy; and (3) competent, experienced, and qualified counsel).

The trial court concluded it is Minden's collection policy, not necessarily the individual damages suffered as the result of this policy, that is at the center of this case. The evidence does show all the plaintiffs have an interest in the outcome as they have been subjected to the same collection policies giving rise to this suit and have testified they are dedicated to the prosecution of this case. In the absence of conflicting or antagonistic claims between the representatives and the putative class members, we agree with the trial court the named plaintiffs adequately represent the class.

*Definability*

Under the final requirement, plaintiffs must show the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment rendered in the case. La. Code Civ. Proc. art. 591(A)(5). We find the trial court's definition clearly meets this requirement. Minden's own billing documents will serve in defining the class as these documents can be utilized to identify those insureds Minden has pursued under the complained-of collection policy.

Accordingly, we find the trial court did not abuse its vast discretion in certifying the class.

**CONCLUSION**

In summary, we find the class action is the superior method for adjudicating the common issue regarding the legality, under the Balance Billing Act, of a health care provider's collection policy of filing medical liens to recover its full rate for services from an insured's settlement or judgment with a third-party tortfeasor. Finding no manifest error in the trial court concluding all remaining elements for class certification—numerosity, commonality, typicality, adequacy, and

23

definability—have been satisfied by the named plaintiffs, we reverse the judgment of the Court of Appeal and reinstate the District Court's certification of the class herein.[3]

## DECREE

For these reasons, we reverse the judgment of the Court of Appeal and hereby reinstate the judgment of the District Court. This case is remanded to the District Court for further proceedings

**REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED AND REMANDED.**

---

[3] Because our review has answered all the issues raised in the Court of Appeal, a remand to that court is not necessary.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-2243

PRENTISS BAKER AND SHERYL WIGINTON, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VERSUS

PHC-MINDEN, L.P. D/B/A MINDEN MEDICAL CENTER

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF WEBSTER

**GUIDRY, Justice, additionally concurs and assigns reasons.**

I additionally concur in the majority's holding that the class action is the superior procedural method for resolving the legal issue presented in this case, and that the plaintiffs satisfied the requirements of La. Code Civ. Proc. art. 591. As the majority properly notes, class action certification is a purely procedural issue, and does not impinge upon the merits of the underlying litigation. *Ante*, pp. 17-18. Notwithstanding my agreement with the resolution of the procedural issue in the case before us, I adhere to my view that *Anderson v. Ochsner Health Sys.*, 13-2970 (La. 7/1/14), ___ So.3d ___, 2014 WL 293710, was wrongly decided. The medical lien alone does not create a private right of action in favor of the insured against the health care provider under the "Balance Billing Act," La. Rev. Stats. 22:1871 *et seq.*, which clearly sets forth the exclusive remedies for a violation thereof. *Anderson*, ___ So.3d at ___, 2014 WL 2937101 at *8-*9 (Guidry, J., dissenting).

1