STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1391

ASHLEY PRATT, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED

VERSUS

UNIVERSITY OF LOUISIANA AT LAFAYETTE, THE BOARD OF
SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEMS, AND
THE UNIVERSITY OF LOUISIANA SYSTEM

Judgment Rendered: ___**OCT 2 1 2022**___

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court Docket Number C632647, Section 24

Honorable Donald Johnson, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Jerry L. Lavespere, Jr.
Alexandria, LA
and
Kevin L. Camel
Lake Charles, LA

Counsel for Plaintiffs/Appellees,
Ashley Pratt, Rachelle Phillips, Jenae Jean,
Krystiana Guillory, Krista Drew,
Candance Carmouche, Dana Davis,
Danica Broussard, Brock Broussard,
Robin Leday, and Elizabeth Brown

Jeff Landry
Attorney General
Cearley W. Fontenot
Daniel J. Phillips
Special Assistant
Attorneys General
Lafayette, LA

Counsel for Defendant/Appellant,
Board of Supervisors for the University of
Louisiana System

\*\*\*\*\*\*\*\*\*\*\*\*\*

**BEFORE: WHIPPLE, C.J., McCLENDON, HOLDRIDGE,
PENZATO, AND HESTER, JJ.**

Whipple, C.J. concurs in part & dissents in part
& assigns reasons.

**PENZATO, J.**

This matter is before us on appeal by defendant, the Board of Supervisors for the University of Louisiana System ("the Board"), from an order of the trial court certifying this matter as a class action. For the reasons that follow, we reverse.

## BACKGROUND AND APPLICABLE LAW

In 2003, the Legislature enacted La. R.S. 17:3351.9, which pertinently authorizes the Board to assess an "academic excellence fee" to be paid by students, in addition to any other tuition or attendance fees or charges established by the Board. A year later, La. R.S. 17:3351(A)(5)(d) was enacted and authorizes each postsecondary system management board to assess an "operational fee" at each institution under its management and supervision. Although both statutes state that the respective fee shall be paid by all students, they also provide for the availability of a waiver in cases of "financial hardship." Neither statute defines "financial hardship." Specifically, as it relates to the waiver, La. R.S. 17:3351(A)(5)(d)(iv) provides, in part,

> [T]he boards shall establish criteria for waiving the fee in cases of financial hardship as determined by each board. Information relative to such waivers and the criteria and procedures for obtaining a waiver shall be made available to all prospective students in a timely manner such that each student is informed of the availability of a waiver prior to the student making a final decision concerning attendance at any institution under the management and supervision of the board.

Louisiana Revised Statutes 17:3351.9(B)(3) places identical requirements on the Board, which is the governing postsecondary management board for the University of Louisiana at Lafayette (ULL). La. R.S. 17:3217(7).

On July 18, 2011, plaintiffs, Ashley Pratt, Rachelle Phillips, Jenae Jean, Krystiana Guillory, Krista Drew, Candance Carmouche, Dana Davis, Danica Broussard, Brock Broussard, Robin Leday, and Elizabeth Brown, students and former students at ULL, filed a class action petition for damages against the Board, asserting claims individually and as representatives of other similarly situated

2

individuals.[1] The plaintiffs averred that, pursuant to the statutes cited above, the Board failed to "provide a proper means" for Pell Grant recipients to apply for a waiver of the academic excellence fee and/or the operational fee (sometimes collectively referred to as "the fees").[2] They alleged that the Board violated these statutes and asserted causes of action for negligence, conversion, and unjust enrichment. Finally, the plaintiffs sought certification of a class consisting of:

> individuals who applied for and were granted Pell Grants to attend U.L.L., and, who were unaware of the availability to request waivers of the Academic Excellence fee and the Operational fee, and, if these people knew of the availability to request said waivers, they would have requested said waivers. Students who were not adequately notified of the Academic Excellence fee waiver and the Operational fee waiver. [Emphasis removed.]

The plaintiffs filed a motion to certify the case as a class action in May 2020, asserting that all criteria required to certify the class are satisfied. Specifically, La. C.C.P. art. 591(A) provides that one or more members of a class may sue as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties are typical of the claims of the class ("typicality"); (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"); and (5) the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case ("objectively defined class"). This final prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's

---

[1] ULL and the University of Louisiana System were also named as defendants but were dismissed, with prejudice, pursuant to a dilatory exception of lack of procedural capacity.

[2] The plaintiffs also cited La. R.S. 17:3351.3(C) and (D), La. R.S. 17:3351.7, La. R.S. 17:3351.8, and La. R.S. 17:1855.1, which are not at issue in this appeal.

3

cause of action to determine whether an individual falls within the defined class. La. C.C.P. art. 591(A)(5).

Once these five prerequisites have been met, Article 591(B) sets forth three additional criteria, one of which must also be satisfied for certification depending on the type of class action sought. Article 591(B)(3), at issue here, provides that an action may be maintained as a class if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Pertinent to our discussion, the plaintiffs maintain that commonality and typicality are satisfied because their damages are identical and were caused by the same conduct by ULL – assessment of the fees. They asserted that the members of the class are ascertainable through the "acquisition of the list of Pell Grant recipients during the applicable years." Finally, they sought certification pursuant to Article 591(B)(3) and identified one issue that predominates over individual considerations – "the waiver was not available to the class members before the final decision was made regarding enrollment" at ULL.

The Board opposed the motion to certify, primarily contending that, since 2003, it has utilized a six-factor test to determine fee waiver eligibility based on financial hardship and that this information was, and still is, publicly available on various University websites. The Board maintained that, to be eligible for a waiver of the fees at ULL, a student must: (1) be a Louisiana resident, (2) be enrolled as a full-time student (12 hours or more), (3) be eligible for a Pell Grant, (4) apply for federal financial aid, (5) accept all financial aid for which the student qualifies, and (6) have total qualified educational expenses that exceed the student's total financial aid package. Thus, the Board argued that class certification was improper because the court would have to conduct "a multifaceted, individualized analysis" to

4

determine whether each student/putative class member met all six criteria for each semester that the student claims fees should have been waived. The Board further argued that the trial court would be required to determine whether each student knew about the waiver and, if not, whether the student's unawareness was caused by ULL or some other reason, such as inattention. For these reasons, the Board asserted that the class cannot be objectively defined, as required, and does not meet the commonality, typicality, and predominance requirements. La. C.C.P. art. 591(A) and (B)(3).

A hearing on the motion to certify the class was held on July 7, 2021. The evidence established that, since the enactment of La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d), ULL has collected an academic excellence fee of $120.00 per student per semester and an operational fee of $61.20 per student per semester. ULL submitted deposition testimony from Dr. DeWayne Bowie, Registrar, and Cindy Perez, Director of Financial Aid. Together, they established the criteria to be used to determine eligibility for a waiver of the fees based on financial hardship. Receipt of a Pell Grant is a threshold waiver requirement but does not conclude the University's inquiry. Each student's ability to meet all six factors is examined. ULL's witnesses and evidence also confirmed that these criteria are used to determine waiver eligibility for all fees collected by the University, not only the academic excellence and operational fees. Thus, once an individual satisfies all six criteria, the student is eligible for a waiver of all fees collected by ULL for the semester, including the academic excellence and operational fees.

The plaintiffs' biostatistics expert did not refute the existence of ULL's six-factor test and confirmed his understanding that receipt of a Pell Grant is the "first level." However, whether an individual is awarded a waiver is based on the criteria indicated by Dr. Bowie.

5

After taking the matter under advisement and receiving proposed findings of fact and conclusions of law from the parties, the trial certified the class and appointed Ashley Pratt as the class representative.[3] The certification order, dated July 23, 2021, defines the class as:

> All individuals who were awarded Pell Grants to attend [ULL], who were charged the Academic Excellence Fee and the Operational Fee by [ULL], and who were not notified of their right to apply for a waiver of the Academic Excellence [F]ee and the Operational [F]ee pursuant to Louisiana Revised Statutes 17:3351.9 and 17:3351.

The trial court also issued written "findings of fact and conclusions of law." The trial court concluded that ULL "had no criteria" pertaining to either of the fees and, instead, "simply used" the waiver criteria previously adopted by the University, which it used to determine waiver eligibility for fees other than the academic excellence and operational fees. Finding ULL had no criteria in place, the trial court determined that the class certification requirements are satisfied because all class members received Pell Grants (estimated at 4,000-6,000 students/plaintiffs per semester), attended ULL from 2003 to present, the fees at issue apply, and each class member has the same damage per semester ($120 and $61.20).

The trial court also found that the class, as set forth in the order, is objectively defined. According to the trial court, inquiry into the merits of each putative class member's cause of action is not required, because "[p]laintiff class members are Pell Grant recipients who attended ULL." Finally, the trial court concluded that questions of law and fact predominate over questions affecting individual members and that the class action procedure is superior to other available methods of adjudication. No legal or factual findings are cited to support this conclusion.

---

[3] The court appointed Jerry L. Lavespere, Jr. and Samuel David Abraham as plaintiff class counsel. In its July 23, 2021 order, the trial court also overruled exceptions of no cause of action and no right of action filed by the Board. These rulings are not at issue in this appeal.

The Board filed the instant suspensive appeal, pursuant to La. C.C.P. art. 592(A)(3)(c),[4] seeking reversal of the trial court's order certifying the class. The Board asserts that the trial court manifestly erred when it found that receipt of a Pell Grant is the only criteria that was (or could be) used for a waiver of the fees at ULL.[5] We agree, and, after reviewing the record *de novo*, we conclude the plaintiffs failed to establish that the criteria set forth in Article 591(A)(1) through (5) and (B)(3) have been satisfied. *See Baker v. PHC-Minden, L.P.*, 2014-2243 (La. 5/5/15), 167 So.3d 528, 539 (the burden of establishing that the statutory criteria have been satisfied falls on the party seeking to maintain the class action).

## DISCUSSION

In determining the appropriateness of class certification, the court is concerned only with whether the statutory requirements are met, not whether the plaintiffs have stated a cause of action or the likelihood they will ultimately prevail on the merits. *Baker*, 167 So.3d at 537; *Robichaux v. State ex rel. Department of Health and Hospitals*, 2006-0437 (La. App. 1st Cir. 12/28/06), 952 So.2d 27, 34, *writs denied*, 2007-0567, 2007-0580, 2007-0583 (La. 6/22/07), 959 So.2d 503 and 504. Nevertheless, the Louisiana Supreme Court has recognized that, in practice, the analysis of whether the class action criteria have been satisfied frequently overlaps with the merits of the underlying claim. *Price v. Martin*, 2011-0853 (La. 12/6/11), 79 So.3d 960, 967. The general rule — that any errors to be made in deciding class action issues should be in favor of the maintenance of the class — cannot and should not be used as a substitute for the rigorous analysis required to

---

[4] Louisiana Code of Civil Procedure article 592(A)(3)(c) provides that a party may take a suspensive or devolutive appeal as a matter of right from an order or judgment certifying the action as a class action.

[5] Because we find merit in the Board's first assignment of error, we pretermit discussion of its second assignment of error, *i.e.*, that the trial court erred when it found that each putative class member's award would be identical.

determine whether the prerequisites of Louisiana's class action provisions have in fact been satisfied. *Id. See also* La. C.C.P art. 591(A)(3)(d).

Whether the trial court applied the correct legal standard in determining to certify the class is reviewed *de novo*, but the court's ultimate decision of whether to certify the class is reviewed under an abuse of discretion standard. *Doe v. Southern Gyms, LLC*, 2012-1566 (La. 3/19/13), 112 So.3d 822, 830. The manifest error standard applies to the trial court's factual findings, which may only be reversed upon a finding that, based on the entire record, no reasonable factual basis exists for the factual finding and the factfinder is clearly wrong. *Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993).

Although the merits of the plaintiffs' claims are not before us, the parties focus on the adequacy of ULL's waiver criteria to support their arguments for and against class certification. This threshold issue requires consideration of the statutory language of La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d) and the legal sufficiency of ULL's method for determining financial hardship. *See Price*, 79 So.3d at 967.

As set forth above, the trial court recognized that ULL used criteria to determine fee waiver eligibility but also made the factual finding that ULL "had no criteria" specifically pertaining to the academic excellence and operational fees. These findings reflect that the court determined, as a matter of law, that La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d) require more than or something different from the criteria used by ULL.[6] *See Baack v. McIntosh*, 2020-01054 (La. 6/30/21), 333 So.3d 1206, 1211 (statutory interpretation is a question of law). Thus, the determination that the six-factor test utilized by ULL is legally insufficient for

---

[6] Although it is well settled that appeals are taken from judgments, not reasons for judgment, a trial court's reasons for judgment may elucidate the trial court's thought process when reaching factual findings. *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So.3d 507, 572.

purposes of La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d) is implicit in the trial court's conclusions.

We find the trial court erred as a matter of law in interpreting the statutes at issue and this legal error interdicted the fact-finding process such that the trial court manifestly erred by finding that no waiver criteria exist. These combined errors led the trial court to certify the class upon concluding that receipt of a Pell Grant is the sole criteria required to receive a waiver of the fees, which is both statutorily and factually incorrect. The trial court failed to conduct the rigorous analysis required to determine whether a class action meets the requirements imposed by law. *Doe v. Southern Gyms*, 112 So.3d at 829.

Neither La. R.S. 17:3351.9 nor La. R.S. 17:3351(A)(5)(d) state that a board or university under its supervision must waive the fee for individuals who receive Pell Grants. Instead, La. R.S. 17:3351(A)(5)(d)(iv) allows each postsecondary system management board to "establish criteria for waiving the [operational] fee in cases of financial hardship *as determined by each board.*" (Emphasis added.) Louisiana Revised Statutes 17:3351.9(B)(3) likewise states that the Board "shall establish criteria for waiving the [academic excellence] fee in cases of financial hardship *as determined by the board.*" (Emphasis added.) Considering this express authority, we find no merit in the plaintiffs' assertion that the class was properly "limited to Pell Grant recipients in keeping with the policy of the applicable statutes that the waivers be limited to those who demonstrate financial hardship."

An examination of La. R.S. 17:3351.3, a similar statute on the same subject, further belies this argument, as well as the trial court's conclusion that receipt of a Pell Grant is all that is statutorily required to qualify for a waiver of the fees. Louisiana Revised Statutes 17:3351.3 provides for the assessment of an academic excellence fee by the Board of Supervisors of Louisiana State University located in Baton Rouge and expressly states that the fee shall be paid by all students *except,*

9

*among others, those who receive Pell Grants*. La. R.S. 17:3351.3(B)(3)(a). This statute was enacted in 2000, prior to the enactment of La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d). The Legislature could have chosen to waive the fees established by La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d) for all students who attend ULL and receive Pell Grants, as it had in the past for those who attend Louisiana State University at its Baton Rouge campus. It did not. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. *Marco Outdoor Advert., Inc. v. Department of Transportation and Development By and Through Wilson*, 2021-0123 (La. App. 1st Cir. 7/13/21), 329 So.3d 288, 299, *writ denied*, 2021-01195 (La. 11/10/21), 326 So.3d 1247.

ULL, as authorized by the Board, had the discretion to rely on the criteria it deemed appropriate to determine financial hardship, including any criteria also used to determine financial hardship and waiver eligibility for other fees assessed by the University. ULL was not statutorily required to create a new or unique standard solely used to determine a student's eligibility for a waiver of the academic excellence and operational fees. *See* La. R.S. 17:3351.9 and La. R.S. 17:3351(A)(5)(d). ULL's uncontradicted evidence establishes that it utilizes six factors to determine waiver eligibility based on financial hardship.[7] A student who satisfies all factors – thus, proving financial hardship as determined by ULL – is eligible for a waiver of all assessed fees, including the academic excellence and operational fees. Nothing in the statutes at issue prohibits this procedure.

---

[7] The plaintiffs' biomechanics expert, who sought to identify any correlation between the waiver applications and the waiver amounts awarded, testified only that ULL's process of providing a single waiver for all fees and "gaps" in information supplied to him made it impossible to determine the amount awarded by ULL as waivers for these the fees.

Thus, we find the Board established that the determination of waiver eligibility at ULL requires each putative class member to demonstrate that she would have satisfied all six criteria for every semester in which she claims the fees should have been waived. Each plaintiff's waiver eligibility is relevant to her success on the asserted causes of action, including unjust enrichment, negligent misrepresentation, and conversion.[8] This required individual analysis precludes class certification, particularly because the commonality and predominance requirements are not met. *Price*, 79 So.3d at 969 (Commonality requires a party seeking certification to demonstrate the class members' claims depend on a common contention capable of class-wide resolution such that the determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke.) As a "logical corollary" to the conclusion that commonality did not exist, the *Price* court also concluded that predominance was not satisfied. *Id.* at 976. *See Fontcuberta v. Cleco Corp.*, 2016-1477 (La. App. 1st Cir. 6/2/17), 222 So.3d 235, 243 (One class member must be able to prove the cause of his injury or damage based on the same set of operative facts as would be offered by every other member of the class.) The facts established at the certification hearing demonstrate that each

---

[8] Unjust enrichment requires a person who has been enriched without cause at the expense of another person to provide compensation to that person. La. C.C. art. 2298. The plaintiff must prove an enrichment, an impoverishment, a connection between the two, an absence of justification or cause for the enrichment and impoverishment, and the lack of another remedy at law. *Calloway v. Lobrano*, 2016-1170 (La. App. 1st Cir. 4/12/17), 218 So.3d 644, 649. To recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. *Riedel v. Fenasci*, 2018-0540 (La. App. 1st Cir. 12/28/18), 270 So.3d 583, 592. The intentional tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. A conversion is any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time. *Jones v. Americas Ins. Co.*, 2016-0904 (La. App. 1st Cir. 8/16/17), 226 So.3d 537, 542.

plaintiff's cause of action against the Board involves many individual variables not capable of class-wide resolution.[9]

Upon *de novo* review of the record, we also find the plaintiffs' proposed class definition is not comprised of an easily identifiable group of similarly situated persons. Therefore, it does not satisfy Article 591(A)(5), which requires the class be objectively defined. The plaintiffs sought to certify a class that includes individuals who were unaware of the ability to request waivers of the fees and "if these people knew of the availability to request said waivers, they would have requested said waivers."[10] The determination of whether a putative class member satisfies this definition requires consideration of what each individual knew, when the knowledge was obtained, and the cause of the individual's ignorance if she was unaware. As the Board points out, each plaintiff must individually establish that ULL caused her to be unaware of the ability to request a waiver; otherwise, there is no liability. Finally, consideration must be given to each individual's subjective beliefs concerning what hypothetical action she may have taken in the past had she known about the ability to request a waiver. These individual inquiries require credibility determinations not subject to resolution on a class-wide basis. Until such an inquiry is made, a court cannot decide whether the elements of numerosity and commonality are satisfied.

For these reasons, we find the plaintiffs failed to carry their burden of proving class certification is proper.

---

[9] We also conclude that the trial court erred by appointing Ashley Pratt as class representative. The plaintiffs offered no evidence of Pratt's claims or Pratt's interest in this proceeding nor did they otherwise demonstrate that Pratt's claims are typical of the claims of the class and that Pratt will fairly and adequately protect the interests of the class. La. C.C.P. art. 591(A)(4) and (5).

[10] The class definition included in the July 23, 2021 order differs from the definition proposed by the plaintiffs and does not include this precise consideration, although it does require consideration of whether the putative class member was "notified." It is unclear when or why the original definition set forth in the petition and in the plaintiffs' motion to certify the class was changed. However, in our *de novo* review, consideration is given to the plaintiffs' proposed definition to determine the appropriateness of class certification.

## CONCLUSION

For the above and foregoing reasons, we reverse the trial court's July 23, 2021 order granting the motion to certify the class filed by plaintiffs, Ashley Pratt, Rachelle Phillips, Jenae Jean, Krystiana Guillory, Krista Drew, Candance Carmouche, Dana Davis, Danica Broussard, Brock Broussard, Robin Leday, and Elizabeth Brown. Costs of this appeal are assessed to the plaintiffs.

**REVERSED.**

| | |
|---|---|
| ASHLEY PRATT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | STATE OF LOUISIANA |
| VERSUS | COURT OF APPEAL |
| UNIVERSITY OF LOUISIANA AT LAFAYETTE, THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEMS AND THE UNIVERSITY OF LOUISIANA SYSTEM | FIRST CIRCUIT |
| | NUMBER 2021 CA 1391 |

**WHIPPLE, C.J., concurring in part and dissenting in part.**

I respectfully dissent from the majority opinion herein and would affirm the trial court's September 21, 2021 order certifying the class due to the heightened standard of review applicable herein; however, I agree with the majority that the trial court erred by appointing Ashley Pratt as class representative.

The only issue to be considered by the trial court when ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. A trial court has wide discretion in deciding whether to certify a class. Baker v. PHC-Minden, L.P., 2014-2243 (La. 5/5/15), 167 So. 3d 528, 537-38. In reviewing a trial court's judgment regarding class certification, the trial court's factual findings are subject to the manifest error standard. However, the ultimate decision of whether or not to certify the class is reviewed under the abuse of discretion standard and any errors made in deciding class action issues should be resolved in favor of and not against the maintenance of the class action, because a class certification order is always subject to modification or decertification, "if later developments during the course of the trial so require." Dupree v. Lafayette Ins. Co., 2009-2602 (La. 11/30/10), 51 So. 3d 673, 680; Baker, 167 So. 3d at 537. Thus, at any time, the trial court "may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action." LSA-C.C.P. art. 592(A)(3)(d).

1

On our review of a trial court's order certifying a class, we are mandated to refrain from considering (or ruling on) substantive issues of the case, except as pertinent to the assignments of error alleged in the appeal. Additionally, in determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or even the likelihood that they will ultimately prevail on the merits. Baker, 167 So. 3d at 537.

On appeal, the Board generally challenges the trial court's determination that this matter satisfied the five requisites for class action as laid out in LSA-C.C.P. art. 591(A) and also complains that, based on the class definition as certified by the trial court, the trial court certified the class based upon the trial court's erroneous implicit finding that the receipt of a Pell Grant is the only criteria for a waiver of the Fees, and thus, that the trial court erred factually. However, based on my review of the record, I find no basis to say that by certifying a class that consisted of only Pell Grant recipients, the trial court erroneously certified the class as a result of implicitly finding that receipt of a Pell Grant was the only acceptable criteria for determining a waiver of the Fees, as claimed by the Board. While the plaintiffs argue that receipt of a Pell Grant should be sufficient to qualify them for a waiver of the Fees, there is nothing in the trial court's signed order or findings of fact and conclusions of law to indicate that the trial court made the determination that receipt of a Pell Grant established the right to a waiver based on hardship.[1]

Additionally, I find that, while each plaintiff may have attended ULL for a different amount of semesters, or may have been entitled to a waiver of the fees for a different amount of semesters, as recognized by the Louisiana Supreme Court, "the mere fact that varying degrees of damages may result from the same factual

---

[1]While the decision to seek certification of a class of solely Pell Grant recipients may ultimately prove fatal to the plaintiff's claim, we are purely concerned with the procedural mechanism of class action litigation and not with whether the plaintiffs have stated a cause of action. See Baker, 167 So. 3d at 537.

2

transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-0494 (La. 11/12/99), 759 So. 2d 755, 756 (per curiam). In this case, it is undisputed that the amount of each of the Fees has remained the same since the Fees were enacted. In fact, the trial court merely found that the amount of each member's award would be the same **per semester**, because the Fees remained the same each semester, a finding which is not manifestly erroneous or clearly wrong.

Recognizing that the analysis of whether the class action criteria has been satisfied may sometimes overlap with the merits of the underlying claim, see Price v. Martin, 2011-0853 (La. 12/6/11), 79 So. 3d 960, 967, I find that the dispute in this matter essentially turns on a question of law and statutory interpretation, namely, whether the criteria or procedure utilized by ULL satisfies the Board's obligation to "establish criteria for waiving the fee[s] in cases of financial hardship." See LSA-R.S. 17:3351(A)(5)(d) and 17:3351.9. According to Dr. Bowie, who was the University Registrar at the time the criteria was "created," the waiver of the two Fees at issue herein is lumped together with the waiver of other fees, namely the building use fee and the tuition increase fees. The unanswered question is whether this procedure complies with the mandates in the statutes creating same. Additionally, Dr. Bowie conceded that ULL is responsible for maintaining records regarding the number of waiver applications received, as well as the number and value of awards granted for each Fee for compliance if the fees are collected, imposed, or waived. Nevertheless, despite the claim that the criteria was made available on a website if a student looked for it, based on the waiver records provided herein, it is impossible to determine which Fees were waived for which awardee. Instead, Dr. Bowie testified that the waiver is a "package deal" of all of the Fees, and the amount waived is only the difference between a student's financial aid package and what the student

owes.[2] Notably, Dr. Bowie testified that a student is unable to apply for the waiver if the student is not a Pell Grant recipient, but that receipt of a Pell Grant does not automatically mean a student will qualify for the waiver. Pell Grants are the "trigger" for the waiver analysis.

However, I do agree with the majority's conclusion that the trial court erred in appointing Ashley Pratt as class representative, because the plaintiffs herein did not present any evidence, in the form of depositions, affidavits, oral testimony, or otherwise, that she is similarly situated to the absent class members. Carr v. GAF, Inc., 97-0838 (La. App. 1st Cir. 4/8/98), 711 So. 2d 802, 806, writ denied, 98-1244 (La. 6/19/98), 721 So. 2d 472 ("Because the record contains no evidence or testimony to suggest that the class representatives are similarly situated to the absent class members, the trial court surely did not have sufficient information to make a determination that the representatives would fairly ensure the adequate representation of the absent members.")

Accordingly, pretermitting whether the plaintiffs can establish a cause of action under the applicable statutes or prevail on the merits of their claims challenging the procedure actually used by ULL, I find the plaintiffs met the threshold obligation of establishing that they could proceed as a class in litigating their claims, particularly given the heightened standard of review applicable to the trial court's findings and ultimate decision to certify the class in these matters. For these reasons, I respectfully concur in part and dissent in part.

---

[2]Based on Dr. Bowie's testimony that all of the Fees are lumped together for purposes of waivers, it is possible that the only fees being waived are the amount of the tuition increase each year, and not the two Fees at issue in this case. Furthermore, the statutes that apply to the Academic Excellence Fee and Operational Fee specifically provide that each fee is to be used for a particular purpose and further, that the Academic Excellence Fee must not be used to pay the salary of any university or university system administrator. Because the fees are all lumped together and considered as a "package deal," and the amount waived is only the difference between a student's financial aid package and what is owed, it is essentially impossible to track the two Fees or to determine precisely the funds generated by each fee and to determine whether the Fees and waivers are being properly administered.

4

ASHLEY PRATT, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED

VERSUS

UNIVERSITY OF LAFAYETTE,
THE BOARD OF SUPERVISORS
FOR THE UNIVERSITY OF
LOUISIANA SYSTEMS, AND THE
UNIVERSITY OF LOUISIANA SYSTEM

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1391

 **HOLDRIDGE, J., agreeing**

I agree. I write further to add that while clearly the class certification ordered by the trial court was not appropriate or legally correct, certification of a class on a more limited basis, utilizing the appropriate standards, may be proper. See *e.g.*, **Brooks v. Union Pacific Railroad Company**, 2008-2035 (La. 5/22/09), 13 So.3d 546, 561.