BOUTALL, Judge.
This consolidated case arises from a controversy over the dissolution of a partnership and partition of immovable property. From a judgment denying his reconventional demand, the defendant/plaintiff in recon-vention has appealed.
Dr. Carolyn Ruth Rudnick Ettinger and Dr. Myron C. Greenleaf were friends of several years who in about 1975 began investing in and developing real estate. They entered into a written partnership agreement, under which they owned some of the properties, and made other investments as co-owners, in both cases sharing the expenses and revenues equally. In 1983, both their social and business relationships disintegrated, culminating in a suit by Greenleaf for dissolution, liquidation, accounting and partition of the partnership and one by Ettinger for partition in kind of the seven properties they then owned.
The trial judge ordered the suits consolidated; however, Greenleaf’s suit was dismissed on an exception of prematurity. Greenleaf filed a reconventional demand against Ettinger, seeking reimbursement for services he performed in connection with the properties in excess of the services rendered by her. The claim was based on a theory of implied contract and also of unjust enrichment. On November 19,1984, trial of the merits of the reconventional demand was held, the parties having agreed to partition by licitation. On April 16, 1985, the trial judge signed a judgment in which he dismissed Greenleaf’s claim and ordered the partition by licitation. He subsequently amended to set out the terms and conditions of the sale, in particular the method and amount of payment in the event either Ettinger or Greenleaf was the successful bidder on a property. Greenleaf has appealed dismissal of his suit.
The issues before this court are: whether there was an implied agreement that Ettinger would compensate Greenleaf for his time in the event that he contributed more effort to the project than she did; if such an agreement existed, whether it was .applicable to the partnership properties as well as to the co-owned properties; and whether a claim of unjust enrichment was .precluded by the partnership agreement.
Implied Contract. It is well settled that in a partnership one or more partners may *1118 receive compensation for their contributions, but only if there is a separate agreement for such compensation. Bernstein v. Pick, 421 So.2d 928 (La.App. 4th Cir.1982). The same rule applies to co-owners, that is, one co-owner may not collect from the other a fee for management services in the absence of a specific agreement. Succession of Rosenthal, 369 So.2d 166 (La.App. 4th Cir.1979), writ denied 371 So.2d 1345 (La.1979), and cases cited therein.
The appellant, Greenleaf, does not assert that there was an express agreement but that there was an implied contract between the parties, coexistent with the partnership agreement and the co-owner relationship, that Ettinger would contribute as much time and effort on the real estate business as Greenleaf and if not she would compensate him for the excess contribution made by him.
Greenleaf’s testimony indicated that he had been a real estate agent while he was in medical school and began buying rental property and building apartments in 1970, at one point curtailing his medical practice to devote more time to real estate. When Ettinger expressed interest in learning the business and investing, he knew she had had no previous experience but told her she would be his apprentice and they would put forth equal time and effort on joint projects. When questioned about the agreement between them, Greenleaf's testimony was as follows:
“Q. Locating, acquiring, financing; did you have any agreement on how you would be reimbursed for doing the locating of property?
A. No. Our agreement was a basic understanding that we are joint-venturing this as equal partners, expecting equal cash investment and equal effort.
Q. And that’s the sole substances (sic) of your agreement, is that correct?
A. Yes; basically, yes.”
Although the case law is sparse, Louisiana does recognize the common law concept of implied contracts. Le Mieux Brothers v. Tremont Lumber Co., 140 F.2d 387 (5th Cir.1944). The court in V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.dApp. 4th Cir.1975), considered a claim based on an alleged implied agreement by taxicab operators to pay a weekly fee to the taxi franchise owner. The court referred to LSA-C.C. art. 1811 which at the time read as follows:
“The proposition as well as the assent to a contract may be express or implied:
“Express when evidenced by words, either written or spoken;
“Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.”
The court said, at 444:
“Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation. LSA-C.C. art. 1817.”
The court explained further, at 444:
“... An implied in fact contract is one which rests upon consent implied from facts and circumstances showing a mutual intention to contract. A contract implied in law (quasi-contract) is without manifestation of consent, and is forced upon the parties by law.”
There is nothing in the record from which one may deduce a promise by Ettinger to give up more than a 50% share of the profits, when she had contributed half the investment and was liable for half of the mortgage indebtedness. If one may find an implied contract based on the facts and circumstances before us, it is that Green-leaf assented to the original agreement between the parties, having taken no steps to change the equal division of labor and profits, even after it became apparent that he was spending more time on the project than Ettinger. His testimony is generally that there were many discussions, but they did not result in any agreement that he would be reimbursed, only that Ettinger would work more. Accordingly, we do not find an implied contract to provide extra *1119 compensation for Greenleaf and we agree with the conclusion of the trial judge.
Unjust Enrichment. The appellant argues that in the event the court denies recovery under an implied contract he is still entitled to recover under the doctrine of unjust enrichment, which is not precluded between partners or joint owners of property.
The jurisprudence is settled that there are five prerequisites for an action for unjust enrichment, as enumerated in Kirkpatrick v. Young, 456 So.2d 622 (La.1984), at 624:
“... 1) [Tjhere must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law....”
We cannot conclude that Greenleaf was impoverished. It is assumed that both parties are obligated to work for the good of a partnership. Greenleaf was aware from the beginning that there would be a disparity in the value of services, even if each party had put in the same number of hours, as he had knowledge and expertise which Ettinger did not possess. The success of the venture depended on his services. On the other hand he had the benefit of her sharing the expense and liability, and had no reason to expect more than half of the profits. As noted above, the partnership rules apply as well to co-ownership.
Greenleaf was not without other remedies at law. At any point in the long period of the business relationship, Green-leaf could have sought dissolution of the partnership or an amendment of the articles to compensate him in proportion to his services. He could have sought partition of the co-owned properties or have contracted with Ettinger for a method of sharing profits other than 50-50. Accordingly, we find the claim for unjust enrichment to be without merit.
For the reasons stated above, we hold that the judgment dismissing Greenleaf’s claim is correct as a matter of law and affirm.
AFFIRMED.