STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 1149

MICHAEL MIAZZA, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE

*Consolidated With*

NUMBER 2023 CA 1150

TAYLOR GUNTER, ON BEHALF OF HERSELF AND OTHER
INDIVIDUALS SIMILARLY SITUATED

VERSUS

LOUISIANA STATE UNIVERSITY SYSTEM, AND OTHER AFFILIATED
ENTITIES AND INDIVIDUALS MARY L. WERNER, ROBERT S. DAMPF,
JAMES M. WILLIAMS, RONALD R. ANDERSON, LEE MALLETT,
RICHARD E. ZUSCHLAG, JACK A. BLOSSMAN, REMY VOISIN STARNS,
JIMMIE M. WOODS, GLENN ARMENTOR, VALENCIA S. JONES, B.
WAYNE BROWN, PATRICK C. MORROW, RAYMOND R. MORRIS AND
COLLIS B. TEMPLE

*DATE OF JUDGMENT:* AUG 0 9 2024

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER C696918 C/W C698930

HONORABLE DONALD R. JOHNSON, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Christopher K. Jones<br>Andrew Blanchfield<br>Chelsea A. Payne<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Board of Supervisors of Louisiana<br>State University and Agricultural<br>and Mechanical College |
| Andrew A. Lemmon<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellee<br>Taylor Gunter |

Guidry, C.J. Dissents and assigns reasons.

Richard C. Dalton
Carencro, Louisiana

Eric M. Poulin, pro hac vice
Roy T. Wiley, IV, pro hac vice
Charleston, South Carolina

Jason P. Sultzer, pro hac vice
Jeremy Francis, pro hac vice
Poughkeepsie, New York

Melissa S. Weiner, pro hac vice
Wayzata, Minnesota

Hassan A. Zavareei, pro hac vice
Anna Haac, pro hac vice
Washington, D.C.

Michael A. Tompkins, pro hac vice
Jeffrey K. Brown, pro hac vice
Brett R. Cohen, pro hac vice
Carle Place, New York

Jeff Ostrow, pro hac vice
Jonathan Streisfeld, pro hac vice
Kristen Lake Cardoso, pro hac vice
Fort Lauderdale, Florida

Edward W. Ciolko, pro hac vice
New York, New York

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, LANIER, WOLFE, AND STROMBERG, JJ.

**Disposition: REVERSED AND REMANDED.**

2

**CHUTZ, J.**

Defendant-appellant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (LSU), appeals a trial court judgment granting a motion for class certification on behalf of plaintiff-appellee, Taylor Gunter. We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On August 17, 2020, Taylor Gunter, individually and on behalf of all others similarly situated, filed a class action petition against LSU.[1] In her pleading, Gunter sought reimbursement on her behalf as well as for other students for benefits and services for which they paid but did not receive during the spring 2020 semester at LSU. Gunter averred that in the wake of the COVID-19 pandemic, LSU cancelled its in-person and on-campus educational services and activities, placing the burden of the campus closures onto its students, requiring them to pay the full amount of tuition and mandatory fees for in-person/on-campus services and amenities. She claimed that, as a result, LSU breached its contract with her and other similarly-situated students. According to her allegations, members of the class (the putative plaintiffs) were both impacted and damaged by LSU's conduct.

LSU answered the lawsuit, generally denying the allegations set forth in Gunter's pleadings but admitted that in accordance with the Governor's Executive Order, LSU announced all classes would be moved to remote learning after spring break, effective March 30, 2020. In its answer, LSU also raised affirmative defenses including discretionary immunity. LSU also pointed out that students were offered the opportunity to complete their Spring 2020 courses from the safety

---

[1] This lawsuit originated when Michael Miazza filed a separate lawsuit against LSU on June 5, 2020. Miazza's and Gunter's lawsuits were consolidated. On November 17, 2022, on Miazza's motion, his claims were dismissed without prejudice and he withdrew as a proposed class representative.

3

of their homes and to receive credit for such courses. New grading options were also provided to students in response to online learning, according to LSU, and direct payments were provided to students under the federal government's Coronavirus Aid, Relief, and Economic Security Act. See Pub. L. No. 116-136, 134 Stat. 281 (2020).

Gunter subsequently filed a motion for certification of the class which LSU opposed. A hearing was held on the motion on March 16, 2023. In a judgment dated May 12, 2023, the trial court granted class certification, designated Gunter as the class representative, and defined the class as: "All students who, as of March 13, 2020, were enrolled at Louisiana State University's main campus in Baton Rouge who paid Tuition and/or Fees for the Spring 2020 semester, or on whose behalf such payment was made." LSU suspensively appealed.

## DISCUSSION

A class action is a nontraditional procedure permitting representatives with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when a question of law or fact is of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. *Price v. Martin*, 2011-0853 (La. 12/6/11), 79 So.3d 960, 966. With respect to the parties, the purpose and intent of the class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but also to all others who are similarly situated. *Price*, 79 So.3d at 966.

The determination of whether a class action meets the requirements imposed by law requires a "rigorous analysis." *Dupree v. Lafayette Ins. Co.*, 2009-2602 (La. 11/30/10), 51 So.3d 673, 679 (quoting *Brooks v. Union Pacific Railroad. Co.*, 2008-2035 (La. 5/22/09), 13 So.3d 546, 554). Such an analysis requires the trial court to evaluate, quantify, and weigh the relevant factors to determine to what

4

extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. *Price*, 79 So.3d at 966-967. Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Dupree*, 51 So.3d at 680.

The only issue to be considered by the trial court when ruling on certification is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of such action, the trial court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements have been met. *Baker v. PHC-Minden, L.P.*, 2014-2243 (La. 5/5/15), 167 So.3d 528, 537.

The procedure for class certification is governed by La. C.C.P. art. 591. Article 591(A) sets forth five threshold requirements that must be met and provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of law or fact common to the class.
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (4) The representative parties will fairly and adequately protect the interests of the class.
>
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

Additionally, Article 591(B) lists three criteria of which only one need be satisfied for certification depending on the type of class action sought. Pertinent for purposes of our review, Subsection (B)(3) provides that an action may be maintained as a class if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[2] Paragraph (C) cautions that class "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." Nevertheless, where certification is maintained, "the court shall retain jurisdiction

---

[2] Paragraph (B) of Article 591 provides in full:

An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

over claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C).

In reviewing a judgment on class certification, the trial court's factual findings are subject to the manifest error standard,[3] while its ultimate decision regarding whether to certify the class is reviewed under the abuse of discretion standard. *Brooks v. Union Pac. R.R. Co.*, 2008-2035 (La. 5/22/09), 13 So.3d 546, 554. Whether the trial court applied the correct legal standard in determining whether to certify the class is reviewed de novo. *Brooks*, 13 So.3d at 554. The burden of proving the statutory class certification criteria have been satisfied falls on the party seeking to maintain the class action. *Dupree*, 51 So.3d at 682.

Commonality requires a party seeking class certification to show that there are questions of law or fact common to the class. See La. C.C.P. art. 591(A)(2). However, the mere existence of common questions will not satisfy the commonality requirement. A party seeking certification must demonstrate that the class members' claims depend on a common contention, and that common contention must be one capable of class-wide resolution—one where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Price*, 79 So.3d at 969 (quoting *Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). To satisfy the commonality requirement, there must exist as to the totality of the issues a common nucleus of operative facts. *Price*, 79 So.3d at 969. When each member of the proposed class will necessarily have to offer different facts to establish liability, the class will degenerate into a series of

---

[3] Subject to the manifest error standard, the trial court's factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993); *Baker*, 167 So.3d at 538.

individual trials. See *Alexander v. Norfolk S. Corp.*, 2011-2793 (La. 3/9/12), 82 So.3d 1234, 1235-1236 (per curiam).

It is undisputed that no written contract to provide an in-person and on-campus experience existed between the putative plaintiffs and LSU. According to Gunter's theory of liability, an implied contract for an in-person education that existed between the putative plaintiffs and LSU could be gleaned from catalogs, bulletins, and website materials in the record.

Although the case law is sparse, Louisiana does recognize the common law concept of implied contracts. *Ettinger v. Greenleaf*, 483 So.2d 1116, 1118 (La. App. 5th Cir. 1986). An implied in fact contract is one that rests upon consent which is implied from facts and circumstances showing a mutual intention to contract. Such implied in fact contracts are not different in their legal effect from express, written agreements. *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 573 (La. 1989).

It is axiomatic that a contract is formed by the consent of the parties established through offer and acceptance. See La. C.C. art. 1927. Thus, an enforceable contract requires a meeting of the minds. The existence or non-existence of a contract is a question of fact, subject to the manifest error standard of review. *Medwick v. MADCON Corp.*, 2021-1620 (La. App. 1st Cir. 8/8/22), 348 So.3d 106, 113, writ denied, 2022-01352 (La. 11/16/22), 349 So.3d 991. Whether a record contains sufficient evidence is a factual determination governed by the manifest error standard. See e.g., *Arias v. Stolthaven New Orleans, L.L.C.*, 2008-1111 (La. 5/5/09), 9 So.3d 815, 818.

Insofar as her claim of an implied contract, Gunter identified twenty-six pages of website printouts as evidence of her expectation of an in-person education. Notably, these documents were identified solely with the College of Art & Design which was the college through which Gunter was studying at the time of

8

the transition from in-person to online courses. The putative class, however, purports to include students who attended all the various different schools on the Baton Rouge campus, among which are law, veterinary medicine, graduate, and undergraduate schools, including fifteen separate colleges. LSU's Baton Rouge schools and colleges have varying degree programs, curricula, services, fees, catalogs, and other materials from which an implied contract with LSU to provide particularized opportunities on campus must be found.

A multitude of individualized inquiries and proof make up the liability and damages issues essential to the putative plaintiffs' implied contract claims. Relative to evidence of the parties' consent necessary to support an implied contract, these inquiries include, but are not limited to, which representations in each school's or college's catalogs, bulletins, and website materials did the putative plaintiff rely upon in developing his or her expectation and what particular facilities and on-campus opportunities did a putative plaintiff expect to utilize; whether the putative plaintiff has historically utilized on-campus facilities and opportunities; which facilities and/or on-campus opportunities, if any, were necessary for a particular school's or college's course completion; and whether a putative plaintiff was satisfied with the online instruction, course credits received, and grading options provided. Additionally, in light of the broad class definition which does not advise a potential putative plaintiff of the need to have been aggrieved by the transition to online class, whether a putative plaintiff actually suffered any financial loss, mindful of each student's particular situation, is another individualized inquiry will have to be elicited from each putative plaintiff. Thus, the record is devoid of sufficient evidence to support findings of offers and acceptances necessary to find meetings of the mind and conclude each putative plaintiff and LSU consented to an implied contract.

9

After review of the record, we conclude that any determination of liability for an implied contract is dependent upon proof of facts individual to each putative class member and, therefore, the class will degenerate into a series of individual trials. This required individual analysis precludes class certification, because the commonality requirement is not met. See *Price*, 79 So.3d at 969. Accordingly, the trial court's finding that Gunter established the requisite showing of commonality is manifestly erroneous.

Because the trial court manifestly erred in determining plaintiffs satisfied the commonality prerequisite of La. C.C.P. art. 591(A), we are compelled to conclude, as the logical corollary to that finding, that substantive questions of law and fact common to the class will not predominate over questions affecting only individual members. Thus, we find that, as with the commonality determination and for the same reasons, the trial court manifestly erred in determining the predominance requirement was satisfied. See *Price*, 79 So.3d at 969. As such, the trial court's certification was an abuse of discretion, and the trial court's judgment is reversed.[4]

## DECREE

For these reasons, the May 12, 2023 judgment of the trial court is reversed. The matter is remanded to the trial court for further proceedings. Appeal costs are assessed against plaintiff-appellee, Taylor Gunter.

**REVERSED AND REMANDED.**

---

[4] Although LSU challenged the trial court's conclusions that Gunter established numerosity, typicality, adequate representation, and objective definability so as to support class certification, having found the trial court erred as to commonality and predominance, we pretermit review of these findings.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 1149

MICHAEL MIAZZA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE

*consolidated with*

NUMBER 2023 CA 1150

TAYLOR GUNTER, ON BEHALF OF HERSELF AND OTHER INDIVIDUALS
SIMILARLY SITUATED

VERSUS

LOUISIANA STATE UNIVERSITY SYSTEM, AND OTHER AFFILIATED
ENTITIES AND INDIVIDUALS MARY L. WERNER, ROBERT S. DAMPF,
JAMES M. WILLIAMS, RONALD R. ANDERSON, LEE MALLETT,
RICHARD E. ZUSCHLAG, JACK A. BLOSSMAN, REMY VOISIN STARNS,
JIMMIE M. WOODS, GLENN ARMENTOR, VALENCIA S. JONES, B.
WAYNE BROWN, PATRICK C. MORROW, RAYMOND R. MORRIS AND
COLLIS B. TEMPLE

**GUIDRY, C.J., dissents and assigns reasons.**          AUG 0 9 2024

**GUIDRY, C.J., dissenting.**

I respectfully disagree with the majority decision reversing the trial court's

class certification of this matter.

The plaintiff herein contends the proposed class is presenting a claim for

breach of contract with economic injury caused to students who paid for in-person

classes not received as a result of the COVID-19 pandemic. As argued by the

plaintiff, the class members are aggrieved because they did not receive what they

bargained for—an in-person educational experience.[1] Evidence identifies every student enrolled in LSU's Baton Rouge main campus during the Spring 2020 semester, those enrolled in "brick and mortar classes."[2] In addition, testimony shows and there is no dispute that the Baton Rouge main campus closed during the spring semester. Thereafter, main campus students transitioned entirely to online learning, generally without receiving any pro-rata refund.

The defendant argues that the plaintiff failed to meet her burden of proof as to the numerosity and ascertainability requirements of La. C.C.P. art. 591(A). I disagree. Louisiana courts have found definable groups of aggrieved individuals where, for example, documents established known individuals who were potentially damaged by a gas well blowout, see Singleton v. Northfield Insurance Company, 01-0447, pp. 11-12 (La. App. 1st Cir. 5/15/02), 826 So. 2d 55, 63, writ denied, 02-1660 (La. 9/30/02), 825 So. 2d 1200, and where the class members were easily identifiable because they were surgically implanted with a contraceptive device, see Davis v. American Home Products Corporation, 02-0942, p. 20 (La. App. 4th Cir. 3/26/03), 844 So. 2d 242, 257-258, writ denied, 03-1180 (La. 6/27/03), 847 So. 2d 1279.

The class definition herein links LSU's campus closure (the defendant's conduct) to the plaintiff's and the class' claim for damages. The definition also identifies a class member as a student enrolled at the main campus in Baton Rouge

---

[1] In Jones v. Administrators of Tulane Educational Fund, 51 F.4th 101, 113 (5th Cir. 2022), the Fifth Circuit found that students plausibly alleged an implied contract for in-person instruction and on-campus facilities in exchange for tuition and fees, so as to state a claim under Louisiana law for breach of contract arising from the university's switch to off-campus learning during the COVID-19 pandemic.

[2] The evidence includes a spreadsheet, LSU's own data, which delineates between online program students and traditional/brick and mortar students, who are identified herein as "main campus" students.

during the Spring 2020 semester, potentially over 26,000 students.[3] Contrary to the defendant's contentions, the class has been objectively defined in clear terms, and potential claimants are sufficiently alerted to the fact that he or she may be a member of the class. See Smith v. City of New Orleans, 13-0802, p. 10 (La. App. 4th Cir. 12/23/13), 131 So. 3d 511, 518, writ denied, 14-0173 (La. 4/4/14), 135 So. 3d 644, and writ denied, 14-0174 (La. 4/4/14), 135 So. 3d 645. Joinder seems impracticable—if not for the sheer number of potential class members alone, but also due to the fact that class members, many of which may no longer be students at LSU, would be required to appear at trial to provide what is very likely repetitive testimony. These factors weigh in favor of class certification.

As it concerns the commonality prerequisite, the record demonstrates that this matter is fairly straightforward in a factual sense considering the potentially large number of plaintiffs. Each of the plaintiffs will have been economically injured, allegedly, after enrolling in the Baton Rouge main campus during the Spring 2020 semester.[4] Prior to the campus closure, each will have taken a certain number of in-person courses and will have paid tuition and fees. After the campus closure, the plaintiffs would have transitioned exclusively to online learning. The plaintiffs would have also lost access to in-person or on-campus instruction, services, and facilities.[5]

_____

[3] Specifically, the class was defined as: "All students who, as of March 13, 2020, were enrolled at Louisiana State University's main campus in Baton Rouge who paid Tuition and/or Fees for the Spring 2020 semester, or on whose behalf such payment was made."

[4] According to the plaintiff's expert, economic injury and aggregate damages for in-person/on-campus services not received can be determined, including by utilizing as one method, for example, LSU's own reduction in tuition and fees for its Spring Intersession 2020, Summer 2020, and Summer Intersession 2020.

[5] Regardless of students' subjective expectations as to instruction and the use of campus services, objectively each class member would have paid for in-person instruction and/or on-campus services and would have lost access to that type of instruction and those services on the date of the campus closure.

While not every plaintiff will have registered for or taken the same number of in-person courses, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification. See Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-0494, p. 3 (La. 11/12/99), 759 So. 2d 755, 756; Schexnayder v. Entergy Louisiana, Inc., 04-636, pp. 14-15 (La. App. 5th Cir. 3/29/05), 899 So. 2d 107, 118, writ denied, 05-1255 (La. 12/9/05), 916 So. 2d 1058. Importantly here, each claim shares a common issue that is central to the validity of all the claims—whether LSU breached an implied contract with its main campus students to provide in-person instruction.[6]

The defendant argues that there are multiple and different implied contracts across its various colleges and schools. There appears, however, to be no dispute that main campus course registration for the subject Spring 2020 semester (across the colleges and schools) generally included registration for in-person instruction, showing building names and room numbers.[7] Moreover, whether an implied contract exists for any class member is a matter to be fleshed out in discovery and/or at trial. See generally Smith, 13-0802 at p. 10, 131 So. 3d at 518 (stating that with regard to the viability of a claim, a certification hearing is not the appropriate venue to determine the merits of the case). Ultimately, if a trier-of-fact finds that an implied contract was indeed breached (a common contention), then it would follow that all class members are entitled to a pro-rata refund or to be otherwise compensated (a class-wide resolution).

---

[6] A review of a plaintiff's individual student record is unnecessary to determine whether any contract was breached in this matter.

[7] As stated in Guidry v. Our Lady of the Lake Nurse Anesthesia Program through Our Lady of the Lake College, 14-0461, p. 6 (La. App. 1st Cir. 1/29/15), 170 So. 3d 209, 213, a course catalog may support a breach of contract claim.

4

Mindful of the fact that the court may alter, amend, or recall its initial ruling on certification, and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action at any time before a decision on the merits of the common issues, see La. C.C.P. art. 592(A)(3)(d), I cannot say the trial court was clearly wrong in finding that the claims of the potential class members have common character and are derived from a common nucleus of operative facts.[8]

Further, based upon plaintiff Gunter's claims and injury[9] as well as her active participation in this case and willingness to appear personally on behalf of the class, I would conclude that the typicality requirement is met and that plaintiff Gunter has an interest in the outcome of this case. The test for typicality is not a demanding one, see Conrad v. Lamarque Ford, Inc., 08-673, p. 18 (La. App. 5th Cir. 5/12/09), 13 So. 3d 1154, 1165, writ denied, 09-1819 (La. 11/6/09), 21 So. 3d 310, and I would decline to extend the requirements for adequacy beyond the factors described in Baker v. PHC-Minden, L.P., 14-2243, p. 22 (La. 5/5/15), 167 So. 3d 528, 543-544.[10]

---

[8] I also note that Louisiana courts are given vast discretion and may order a trial in phases of common issues and individual issues to alleviate the claims that a class action is unworkable. Claborne v. Housing Authority of New Orleans, 14-1050, p. 20 (La. App. 4th Cir. 4/15/15), 165 So. 3d 268, 285, writ denied, 176 So. 3d 1039 (La. 2015).

[9] The trial court found that plaintiff Gunter enrolled in five classes as an undergraduate student at LSU for the Spring 2020 semester, with Gunter presenting evidence showing the courses were scheduled to be in-person and on-campus. The trial court also found that Gunter made arrangements to pay her cost of attendance by taking out student loans, in addition to receiving exemptions and awards. I find no clear error in the trial court's conclusions. In addition, I note that plaintiff Gunter's expert calculated damages for her and estimated they would be between $437-$933.

[10] The following factors "may be relevant" in determining the adequacy requirement: (1) the representative must be able to demonstrate that he or she suffered an actual as opposed to a hypothetical injury; (2) the representative should possess first-hand knowledge or experience of the conduct at issue in the litigation; (3) the representative's stake in the litigation should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and (4) the representative should not have interests seriously antagonistic to or in direct conflict with those of other class members. Baker, 14-2243 at p. 22, 167 So. 3d at 543-544. In addition, the representatives' claims need not exhibit all of the various types of possible injuries or elements of damages claimed by the class as a whole. Boyd v. Allied Signal, Inc., 03-1840, p. 25 (La. App. 1st Cir. 12/30/04), 898 So. 2d 450, 464-465, writ denied, 05-0191 (La. 4/1/05), 897 So. 2d 606.

5

The overriding, common issue that predominates in this case is whether a contract promising in-person, on-campus services existed between LSU and its students, and if so, whether LSU breached that contract when it closed its campus and transitioned to remote learning without providing pro-rata refunds to its main campus students. Once a factfinder decides this single and paramount issue, liability for each of the class members will be resolved, across the class. Furthermore, as expressed above and in accordance with La. C.C.P. art. 591(C), the fact that varying degrees of damages may result from the same factual transaction and same legal relationship does not preclude class certification. See Baker, 14-2243 at p. 13, 167 So. 3d at 539. It is well established that individual questions of quantum do not preclude a class action when predominant liability issues are common to the class. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So. 2d 612, 620 (La. 1984).

As a general rule, any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification is *always* subject to modification or decertification if later developments during the course of the trial so require. See La. C.C.P. art. 592(A)(3)(d); Baker, 14-2243 at p. 11, 67 So. 3d at 537 (emphasis in original). In determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements have been met.[11] Baker, 14-2243 at p. 10, 167 So. 3d at 537. Whether a class has a valid claim will be hashed out at trial. A certification hearing is not the appropriate venue to decide the merits of the case or the defenses asserted. A certification hearing does not determine liability. Smith, 13-0802 at p. 10, 131 So. 3d at 518.

---

[11] The only issue to be considered by the trial court when ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device is appropriate. Baker, 14-2243 at p. 10, 167 So. 3d at 537.

For these reasons, considering the record as a whole, I would find no manifest error in the trial court's factual determinations and no abuse of discretion in the trial court's certification of the class action.